HARDIN, COMMISSIONER OF REVENUES, *v.* FORT SMITH COUCH & BEDDING CO.

4-6473                                    152 S. W. 2d 1015

Opinion delivered July 7, 1941.

*Jack Holt,* Attorney General, *Elsijane Trimble* and *Leffel Gentry,* for appellant.

*Daily & Woods, Rowell, Rowell & Dickey, Brickhouse & Brickhouse, E. Chas. Eichenbaum,* and *Gaughan, McClellan & Gaughan,* for appellees.

*Rose, Loughborough, Dobyns & House, amici curiae.*

McHANEY, J. Appellee, Fort Smith Couch & Bedding Company, a domestic corporation, brought this action against appellant to enjoin him from collecting from it an income tax based on its income for the year 1940, on the rates of tax fixed in act 129 of 1941, Acts of 1941, p. 312, and alleged that it had filed its return covering the income year 1940, under the provision of act 118 of 1929, and that its tax for such year amounted to $744.93, of which it had paid one-half on the filing of its return; that appellant is wrongfully demanding a tax on its income year of 1940 based on the rates fixed in said act 129 of 1941 in the sum of $1,487.33; that said act is not retroactive as to 1940 income; and that by the express provision of paragraph (c) of § 2 thereof, the rates prescribed by said § 2 apply to the income year of 1941. It was also alleged that the whole of said act 129 is inoperative, ineffective and void because, as originally introduced and passed in the house as house bill 282, it was amended in the senate by striking out § 3 and substituting therefor a new section, and passed as amended; and that the house did not thereafter concur in said amendment, and, therefore, it was not constitutionally enacted as provided by § 22 of art. 5 of the Constitution. It is also alleged that it did not pass by the vote required by Amendment No. 19. On application of said appellee, the court granted a temporary injunction.

The Arkansas Amusement Corporation also a domestic corporation, intervened and adopted the allegations of the complaint. Appellant answered admitting the status of the parties and the correctness of the income tax return made by appellant, but asserted the applicability of the rates prescribed by said act 129 to the income year of 1940 as well as the validity thereof.

The appellee, Public Utilities Company of Crossett, also a domestic corporation, filed an independent action against appellant, setting up similar allegations to those above set out, but in addition stated that its income year ended November 30, 1940, and that it had made its income return for that year showing a tax due of $288.01 which it had paid on the filing of said return on March 14, 1941. It also alleged a new ground of attack on the validity of said act 129 based on sub-section (b) of § 2 relating to the tax on foreign corporations. The answer to this suit contained appropriate admissions and denials.

The facts were stipulated that appellees and inter-vener had made correct returns and had tendered the correct tax based on act 118 of 1929. The dispute was over the applicability of the rates fixed by act 129 of 1941 to the 1940 income, and as to the proper enactment of the latter act. The trial court sustained the act, but held that it did not apply to corporate income of 1940, and entered a decree making the temporary order permanent. There is here an appeal and cross-appeal. We dispose of the cross-appeal first.

Section 1 of said act 129 repeals paragraph (e) of § 14039 of Pope's Digest which allowed a $1,500 exemption to foreign and domestic corporations. Section 2 (a) provides the rate of tax for domestic corporations and § 2 (b), the rate for foreign corporations in this language: "Every foreign corporation doing business in this state shall pay annually an income tax *on the corporation* of its entire net income as now determined by the income tax laws of Arkansas, on the following basis:" It is said that the italicized word "corporation" as used therein is meaningless and so it is. It is also argued that, since it is meaningless, the act requires a tax on the whole net income of a foreign corporation, both that earned within and without this state, which would be unconstitutional and void as being discriminatory as between domestic and foreign corporations. We do not agree. Under the Income Tax Act of 1929, § 14026 (b) of Pope's Digest, it is provided that "every foreign corporation—shall annually pay an income tax

equivalent to two (2%) per cent. *of a proportion* of its entire net income to be determined as hereinafter provided." We think the scrivener of the former act must have made a clerical or typographical error in using the word "corporation" instead of the word "proportion." Assuming that appellees have the right to raise the question, we hold that is a mere clerical misprision as shown by a comparison with the former act.

It is further contended that act 129 failed to pass because it was amended in the senate, which amendment was not concurred in in the house. But the records of the senate, other than the journal, show that the amendment in the senate was receded from or withdrawn. Section 22 of art. 5 of the Constitution provides, among other things, that "no bill shall become a law unless on its final passage the vote be taken by yeas and nays, the names of the persons voting for and against the same shall be entered on the journal and a majority of each house be recorded thereon as voting in its favor." The journal does show the adoption of Amendment No. 1 to the house bill in the senate, but it is silent as to its withdrawal or to any action receding therefrom. It was shown in evidence that the minutes of the secretary of the senate and another record of the secretary of the senate entitled "House Bills in Senate," both of which are on file with the Secretary of State, recite the fact that Amendment No. 1 to house bill 282 was withdrawn. These are public records on file with the Secretary of State, and are required to be so filed. Section 6171, Pope's Digest. There is a presumption of the regularity of the passage of a bill from the fact of its enrollment, its approval by the Governor and its deposit with the Secretary of State. In *Helena Water Co.* v. *Helena,* 140 Ark. 597, 216 S. W. 26, it was said: "The silence of a legislative journal, on matters not required to be entered on the journal, cannot conflict with the presumption of the regularity of the passage of a bill."

The act was enrolled, approved, filed and now appears in the printed acts. In *Mechanics B. & L. Assn.* v. *Coffman,* 110 Ark. 269, 162 S. W. 1090, it was held that

the courts may resort to any information filed under the statutes, to determine what the journal shows. See, also, *Perry* v. *State*, 139 Ark. 227, 214 S. W. 2.

Without entering on an extended discussion of the contention that the emergency clause is insufficient under Amendments No. 7 and 19 to the Constitution, we think it enough to say that we find the argument of cross-appellants without substantial merit, and the decree will be affirmed on the cross-appeal.

As to the direct appeal, sub-section (c) of § 2 of said act 129, after setting out the rates of tax on all corporations in (A) and (B) provides: "(C) The above provided rates shall apply to the income tax year of 1941." The question is, What is the meaning of the words "income tax year?" Do they mean "income year" or "tax year," as defined in the Income Tax Act of 1929? There, "tax year" is defined in sub-section 11 of § 14025, Pope's Digest, to mean "the calendar year in which the tax is payable," and "income year" is defined in sub-section 12 to mean "the calendar year or the fiscal year, upon the basis of which the net income is computed under this act, if no fiscal year has been established they mean the calendar year." The word "fiscal year" is defined as "an income year, ending on the last day of any month other than December." Also, said Income Tax Act of 1929 left no doubt as to the first income to be taxed thereunder. Section 14027 of Pope's Digest specifically provides: "Such tax shall first be assessed, levied, collected and paid in the year 1929 and with respect to the net income received during the calendar year 1928; provided, when the taxpayer's income year ends on any date other than December 31, 1928, only that portion of such annual income shall be taxable under this act as is applicable to the calendar year 1928." How easy and simple it would have been for the Legislature to have said in the 1941 act, that: "Such tax (the new rates) shall first be assessed, levied, collected and paid in the year 1941 with respect to the net income received during the calendar year 1940; provided," etc. Or, had said sub-section (C) provided that: "The above pro-

vided rates shall apply to the 'income year' of 1940,'' then there could be no doubt about what year's income was to be taxed on the new rates. Instead, without further definition of terms, the Legislature used a combination of the two well defined terms, ''income tax year,'' with the result that no one can tell with certainty whether the new rates are to be based on the 1940 income or the 1941 income. Appellant contends that the words ''income tax year'' mean the same as ''tax year'' and that the word ''income'' should be ignored, but we do not think we may do this.

There are two well settled rules for statutory construction in this state. One is that, ''It is presumed that all legislation is intended to act only prospectively, and all statutes are to be construed as having only a prospective operation unless the purpose and intention of the Legislature to give them a retroactive effect is expressly declared or necessarily implied from the language used.'' *State* v. *K. C. & M. Ry. & B. Co.*, 117 Ark. 606, 174 S. W. 248; *Special School District of Texarkana* v. *Bd. of Imp. of Pav. Dist. No. 13 of Texarkana*, 127 Ark. 341, 191 S. W. 918; *Elrod* v. *Bd. of Imp. of Pav. Dist. No. 45*, 171 Ark. 848, 286 S. W. 965. In *Rhodes* v. *Cannon*, 112 Ark. 6, 164 S. W. 752, the rule is thus stated: ''No statute will be given retroactive effect if it is susceptible of any other construction.'' Now, to give this statute the construction contended for by appellant would be in the very teeth of this rule. There are no express words giving it a retroactive effect and we find no language in the emergency clause or elsewhere that necessarily so implies. At least we cannot say that the statute is not susceptible of any other construction. If the Legislature intended to make the act retroactive so as to tax, with the new rates, 1940 income, it certainly did not choose definite language to express such intention. The second rule is well stated in *Wiseman* v. *Ark. Utilities Co.*, 191 Ark. 854, 88 S. W. 2d 81, by the late Judge BUTLER as follows: ''It is the general rule that a tax cannot be imposed except by express words indicating that purpose. The intention of the Legislature is to be gathered from a con-

sideration of the entire act, and where there is ambiguity or doubt it must be resolved in favor of the taxpayer, and against the taxing power.''

Counsel for appellant make a very plausible argument that the word ''income,'' as used in said sub-section (C), is used in its adjective sense and is definitive or descriptive of the kind of tax year, and we concede that it may have been so used, but we cannot say that it was necessarily so used, which we would have to say to support the contention.

The argument made by counsel relative to the presence of the emergency clause and its recitals is not convincing. Under Amendment No. 19 to the Constitution, the Legislature could not have increased the tax rates without an emergency; and, without such a clause, a referendum petition would have postponed operation of the act until approved by the people, whereas, with such a clause, a referendum petition would not stay operation of the act.

We are, therefore, of the opinion that the trial court correctly enjoined appellant from collecting the new rates of tax on 1940 income and the decree is accordingly affirmed.