The ARKANSAS RURAL MEDICAL PRACTICE
STUDENT LOAN AND SCHOLARSHIP BOARD
*v.* Dennis Wayne LUTER

86-253                                                      729 S.W.2d 402

Supreme Court of Arkansas
Opinion delivered May 26, 1987

*Fred H. Harrison*, General Counsel for the University of
Arkansas and *Steve Clark*, Att'y Gen., by: *C. Randy McNair*,
Asst. Att'y Gen., for appellant.

*Harkey, Walmsley, Belew & Blankenship*, by: *John Norman Harkey*, for appellee.

JOHN I. PURTLE, Justice. In 1949 the legislature passed Act 131 creating the Arkansas Rural Medical Practice Student Loan and Scholarship Board to promote medical practice in rural areas.[1] The act provided for a five member board, established methods of funding and authorized the Board to lend money to University of Arkansas medical students in amounts not exceeding $1,625 per year nor $6,500 per student. The loans were subject to a number of conditions including a provision that if the recipient elected to practice in a community having a population of 2,000 or less (defined as a rural community), the debt was discharged on a ratio of 20 per cent for each year of practice in such rural community. By subsequent amendments a number of changes have been made in the original act, including increases in the population of a rural community and in the amounts available per student.

While attending medical school during 1974, 1975 and 1976, Dr. Dennis Luter (appellee) received loans totalling $13,900 from the Board (appellant). The notes provided that if Dr. Luter practiced medicine in a community having a population of 6,000 or less, the loans would be discharged as provided in the act. The loans became due on January 1, 1979 but payment was extended by the Board due to hardship.

In 1982 Dr. Luter located in Batesville. The Board notified him that Batesville, having a population of 8,241, did not qualify as a rural community. Dr. Luter refused payment of the notes and in October of 1985 the Board filed suit against him. Dr. Luter moved to dismiss the complaint based on Act 797 of 1985, which increased the population of a rural community from 8,000 to 8,300. The parties stipulated that Batesville had a population of 8,241. The trial court granted the motion to dismiss upon a finding that Batesville met the definition of a rural community under Act 797. The Board has appealed.

When Dr. Luter settled in Batesville in mid-1982, a rural community was defined under Act 47 of 1981 as having a

---

[1] Ark. Stat. Ann. § 80-2908—2919 (Repl. 1980).

population of 8,000 or less. Hence Dr. Luter was clearly not entitled to have his debt to the Board discharged. However, Act 797 of 1985 increased the figure to 8,300. The act, with an emergency clause, took effect on April 3, 1985, so the issue is whether Act 797 was intended to operate retrospectively. If so, we must affirm the trial court. If not we must reverse. We hold the act was not meant to operate retrospectively.

■■ The general rule can be stated categorically—laws affecting substantive rights operate prospectively. The editors of Am.Jur.2d, Vol. 73, *Statutes*, § 350, state the rule in these terms:

> The question whether a statute operates retrospectively, or prospectively only, is one of legislative intent. In determining such intent, courts observe a strict rule of construction against a retrospective operation, and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively. *However, a contrary determination will be made where the intention of the legislature to make the statute retroactive is stated in express terms, or is clearly, explicity, positively, unequivocably, unmistakably, and unambiguously shown by necessary implication or by terms which permit no other meaning to be annexed to them, and which preclude all question in regard thereto, and leave no reasonable doubt thereof.* (Our emphasis).

■ The operation of a statute must be prospective only, "unless the words are so clear, strong and imperative as to have no other meaning." *United States Fidelity & Guaranty Co.* v. *Struthers Wells Co.*, 209 U.S. 306 (1908). "Any doubt is resolved against retroactivity and in favor of prospectivity only. *McQueeney* v. *Catholic Bishop of Chicago*, 159 N.E.2d 43, 80 A.L.R.2d 796 (1959). "A retrospective application will not be given to a statute which interferes with antecedent rights unless such be *the unequivocal and inflexible import of the terms and the manifest intention of the legislature.*" *United States* v. *Security Industrial Bank*, 459 U.S. 70 (1982) (our emphasis). Statutes will not be construed to have retroactive operation "unless the language is so clear it will admit of no other construction." *Sutherland Statutory Construction*, Vol. 2, §

41.04, p. 348.

Our own cases are in accord with the foregoing. In *Abrego* v. *United Peoples Federal Savings & Loan*, 281 Ark. 308, 664 S.W.2d 858 (1984) this court refused to give retroactive application to a regulation of the Federal Home Loan Bank Board affecting due-on-sale clauses in mortgages. The *Abrego* opinion quotes with approval language from *United States* v. *Security Industrial Bank, et al., supra*:

> The first rule of construction is that legislation must be considered as addressed to the future, not to the past. . . . The rule has been expressed in varying degrees of strength but always of one import, that a retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be "the equivocal and inflexible import of the terms, and the manifest intention of the legislature."

The court in *Abrego* concluded:

> In the absence of any *express language* requiring retroactive application of the regulation, and because of the vested property rights under state law, the regulation does not operate retroactively. (Our emphasis).

In *United States Gypsum Co.* v. *Uhlhorn*, 232 F. Supp. 994 (E.D. Ark. 1964) the federal district court considered retroactivity in connection with a dispute over the procedures for purchasing state lands. Prior to March 30, 1959 one procedure was prescribed. By Act 452 of 1959 the procedure was changed while an application to purchase was pending, but prior to completion and issuance of a deed. Judge Gordon Young held that Act 452 only applied prospectively and did not affect the application filed under prior law:

> Clearly, a statute under the laws of Arkansas will not be given a retroactive effect if it is susceptible to any other construction. (Citations omitted) *Uhlhorn* at p. 1002.

In *Chism* v. *Phillips*, 228 Ark. 936, 311 S.W.2d 297 (1958), we said:

> "It is presumed that all legislation is intended to act only prospectively, and all statutes are to be construed as

having only a prospective operation unless the purpose and intention of the Legislature to give them a retroactive effect is expressly declared or necessarily implied from the language used."

To the same effect see *Hardin, Commissioner of Revenues* v. *Ft. Smith Couch & Bedding Co.*, 202 Ark. 814, 152 S.W.2d 1015 (1941) and *Snuggs* v. *Board of Trustees of Arkansas State Employees Retirement System*, 241 Ark. 402, 407 S.W.2d 933 (1966).

Turning to Act 797, we find no express language that the act is intended to operate retroactively.[2] In fact the only express language is to the contrary—that the act will take effect on *passage and approval* (April 3, 1985). In other cases we have considered such contradictions to weigh against retroactivity. See *Lucas* v. *Hancock*, 266 Ark. 142, p. 153, 583 S.W.2d 491 (1979). Hence, our interpretation of the act must be aimed at determining whether retroactive effect is implied so clearly and unequivocally as to eliminate any doubt.

The trial court relied on the language in Section 3 of the act:

Emergency. It is hereby found and determined by the General Assembly that the definition of rural community as used in the Rural Medical Student Loan and Scholarship Act has been misconstrued; that it is the intention of this Act to redefine the term "rural community" for the purposes of that Act and to make it applicable to persons who have in the past or now practice medicine in such rural communities; that some doctors have been denied the cancellation of their loans due to the misinterpretation of the law; and that this Act is immediately necessary to provide an equitable remedy to such persons. Therefore, an emergency is hereby declared to exist and this Act being immediately necessary for the preservation of the public peace, health and safety shall be in full force and effect from and after its passage and approval.

---

[2] In contrast, see Act 169 of 1913 ("provided, that this Act shall be construed as retrospective as well as prospective in operation") or Act 102 of 1935 ("This act shall be retroactive and shall take effect as of October 1, 1934").

Certainly the words "to persons who have in the past or now practice medicine in such rural communities. . ." is suggestive of retrogression. But we do not believe it meets the requirements of the law. That language would be more persuasive if it were not part of the emergency clause—the same provision that expressly declares that the act is meant to take effect on passage. In short, it is difficult to conclude that an act which expressly states it will take effect at passage can by the same provision *imply* that it takes effect at some earlier unspecified time. If that is the intent of the legislature, it must be more explicit. The implication is at least as great that it is meant to take effect at passage and apply to persons who now or in the past have practiced medicine in a rural community. We note too that in previous amendments to Act 131 the legislature has expressly provided that no provision of the amending act shall impair any loan obligation now outstanding. (See Act 62 of 1972).

Therefore, we cannot say with assurance that the ambiguous wording of the emergency section of Act 797 so clearly manifests an intent that the act have retroactive effect that we are free of doubt. On the contrary, the language itself leaves us with a distinct uncertainty as to the intent.

■ There are added reasons why we have come to this view—Act 797 is amendatory and we have held that the rules against retroactive operation apply *especially* with reference to amendatory acts. *Lucas* v. *Hancock, Adm'x., supra.*

■ Secondly, it is plain this legislation (Act 797) insofar as it changes the population ceiling of a rural community from 8,000 to 8,300 operates specially. The original act set the ceiling at 2,000. Act 69 of 1955 left that figure intact. Act 181 of 1963 increased it to 4,000, Act 533 of 1971 increased it to 6,000 and Act 47 of 1981 to 8,000. None of the seven amendments to this legislation have been made retroactive nor have the previous population changes been so clearly tailored to a specific community. While we regard such considerations as matters of legislative discretion, where the issue is retroactivity versus prospectivity, there is authority to the effect that "the policies against retroactivity weigh most heavily against retroactive laws which are also special in their application." *Sutherland Statutory Construction*, Vol. 2, § 41.04, p. 348.

■ Finally, also present here is the factor that retroactive application of Act 797 would impair contractual rights of the Board which had vested some six years prior to the adoption of Act 797. When that is so, it is even clearer that the language of an enactment must be express if it is to have retroactive effect. Appellee argues that a state may impair its own rights as opposed to those of a private entity without violating Article 2, Section 17 of the Arkansas Constitution. But the issue is not the *exercise* of the power but whether that was indeed the intent. We are decidedly of the view that Act 797 failed to make that intention clear.

Appellee cites *Aluminum Co. of America* v. *Neal*, 4 Ark. App. 1, 626 S.W.2d 620 (1982) wherein the Court of Appeals construed Act 215 of 1979 (allowing lump sum attorney fees in workers compensation cases) as intended to take effect retroactively. Act 215 was passed promptly after this court invalidated lump sum attorneys fees in *U.S.F. & G.* v. *Potter*, 263 Ark. 689, 567 S.W.2d 104 (1978). But in *Neal* there was no element of vested rights and no hint of special legislation. Lump sum attorney fees had been allowed before *Potter* and they were reinstated by Act 215. The Court of Appeals simply held the act was intended to continue such allowances without interruption. The remedial objectives of the legislation warranted that result.

The order appealed from is reversed and the case is remanded for further proceedings.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. While the language in Act 797 does not state specifically that the act shall be applied retroactively, it does contain explicit language that can have no other possible intent. Thus it is either *expressly stated* or *necessarily implied*, depending on one's point of view. Section 3 of the act reads in part:

> . . . it is the intention of this act to redefine the term "rural community" . . . and *to make it applicable to persons who have in the past or now practice medicine in such rural communities*; that some doctors have been denied the cancellation of their loans due to the misinterpretation of the law; and that *this Act is immediately necessary to*

*provide an equitable remedy to such persons.* (My emphasis.)

When the legislative intent to have an enactment operate retroactively is clearly stated, it is the duty of the judicial branch to construe the legislation accordingly. We did that in *Forrest City Machine Works* v. *Aderhold*, 273 Ark. 33, 616 S.W.2d 720 (1981). The Court of Appeals did the same in *Aluminum Co. of America* v. *Neal*, 4 Ark. App. 1, 626 S.W.2d 620 (1982). Yet neither statute construed in those cases expressly or impliedly suggested retroactive application, we simply chose to construe the acts in that fashion.

Clearly, if Act 797 is to provide the equitable remedy to persons who have in the past practiced medicine in a rural community who are being "denied cancellation of their loans due to misinterpretation of the law," the act must be given retroactive effect. Under the majority's interpretation, the purpose and avowed intent of the act is defeated.

The very fact that earlier amendments to Act 131 of 1949 have expressly stated that no provision of the amending act shall be construed as impairing any loan "now outstanding" (See Act 62 of 1972, for example) reinforces the position that Act 797 intends that loans of persons practicing in rural communities of 8,300 and under would be affected by the 1985 amendment. The fact that Act 797 raised the rural community ceiling to 8,300 rather than 9,000 evidences, I believe, that the intent of the legislation was that anyone then practicing in Batesville (or other smaller communities) would benefit under the act.

I am not troubled by the fact that the emergency clause (which is actually part of the act) states that the legislation takes effect at passage. That is the traditional wording of emergency clauses and cannot defeat an intent otherwise stated—that the act have retroactive operation. Act 169 of 1913, for example, provides that it will be construed as having retroactive effect, at the same time stating it will take effect at passage.

As to the argument that legislation cannot impair antecedent rights under a contract it is enough to say that only the rights of the state itself are impaired by Act 797 and it is plain the state is free to impair those if it wishes. *Skelton* v. *B.C. Land Company,*

*Inc.*, 260 Ark. 122, 539 S.W.2d 4 (1977).

I believe the trial court ruled correctly and should be affirmed.

GLAZE, J., joins in this dissent.