The Honorable Bob McMahan Prosecutor Coordinator 323 Center Street, Suite 750 Little Rock, Arkansas 72201
Dear Mr. McMahan:
This is in response to your request for an opinion on nine questions concerning Act 1120 of 1999. That act, which became effective on July 30, 1999, amended A.C.A. § 5-64-505, which governs the forfeiture of property under the "Uniform Controlled Substances Act." Your nine questions will be set out and addressed seriatim, below.
Question 1 — In order to forfeit items subject to forfeiture under §5-64-505(a), which were seized prior to the July 30 date, does theprosecuting attorney apply the forfeiture law in effect at the time ofseizure?
It is my opinion that the answer to this question is "yes." Act 1120 of 1999 became effective on July 30, 1999. See Op. Att'y Gen. 99-120. Your question has reference to seizures that occurred prior to this date. The issue presented, therefore, is one concerning the "retroactivity" of the legislation. It is well established that legislative enactments will ordinarily be deemed to apply prospectively only, unless the intent for retroactive application is clearly expressed. See Abrego v. UnitedPeoples Fed. Sav. Loan, 281 Ark. 308, 664 S.W.2d 858 (1984). Legislation will not be construed as being retroactive if it may reasonably be construed otherwise, and any doubt is resolved against retroactive application. Arkansas Rural Medical Student Loan Scholarship Bd. v. Luter, 292 Ark. 259, 729 S.W.2d 402 (1987). An exception to the general rule of prospective application applies in the case of procedural or remedial legislation that does not disturb vested rights or create new obligations. Harrison v. Matthews, 235 Ark. 915,362 S.W.2d 704 (1962). Even remedial legislation may not be applied retroactively, however, unless the legislature's intent is so clear, strong and imperative as to have no other meaning. Luter, supra.
I can find no evidence of a legislative intent indicating that the procedures in Act 1120 for effecting the forfeiture of seized property have retroactive application. In fact, if the act were given retroactive effect in this regard, it would be impossible to comply with some of its provisions. For example, the new act requires the completion of a "confiscation report" within forty-eight hours after the seizure and requires the signature of the party from whom the property was seized or an additional law enforcement officer. This confiscation report must be filed with a complaint for forfeiture by the prosecuting attorney. Obviously, for property seized prior to the effective date of Act 1120, the newly required "confiscation report" will not have been completed. It would therefore be impossible, at least in some respects, to comply with Act 1120 if the seizure occurred prior to the act's effective date. In my opinion, therefore, the answer to your question is "yes," the prosecutor should apply the law in effect at the time of the seizure.
Question 2 — Do the proceeds currently in the drug control funds of theprosecuting attorneys and law enforcement agencies have to be consideredin the new $20,000 cap per county pursuant to § 5-64-505 (i)(1)(A)(i) forthe 1999 calendar year?
It is my opinion that the answer to this question, assuming it refers to moneys deposited in the fund prior to July 30, 1999, is "no." This conclusion follows, in my opinion, from the response to your first question above. The act, in my opinion, does not have retroactive application. Subsection (i) which imposes the $20,000 cap, provides that "[t]he proceeds of any sale and any moneys forfeited or obtained by judgment or settlement under this chapter shall be deposited in the asset forfeiture fund of the prosecuting attorney and shall be subject to [the "$20,000 cap.]" This subsection, because it requires sale proceeds and other moneys to be "deposited," appears to look forward in its application. That is, the intention appears from the language to be to apply the requirements to deposits made after the effective date. I can find no clear expression of legislative intent to apply the provision to deposits previously made. In my opinion, therefore, the answer to your second question is "no."
Although your question inquires about moneys "deposited" prior to the effective date of the act, I should also note, consonant with my response to Question 1 above, and the relevant language of the new act, that any proceeds arising from seizures occurring prior to the Act's effective date would likewise be exempted from the twenty percent cap. Those proceeds do not arise "under this chapter" for purposes of applying the twenty percent cap. See again, A.C.A. § 5-64-505(i)(1)(A) and (i)(1)(A)(i).
Question 3 — Does § 5-64-505 (i)(4) conflict with federal law byrequiring the funds from federal forfeitures to be subject to therequirement that any balance over $250,000 be forwarded for deposit inthe Special State Assets Forfeiture Fund?
It is my opinion that on its face, A.C.A. § 5-64-505 (i)(4) does not conflict with federal law. The subsection in question, ((i) (4)), provides as follows:
 (A) All moneys received by prosecuting attorneys and law enforcement agencies from federal forfeitures shall be deposited and maintained in a separate account, provided that any balance over two hundred fifty thousand dollars ($250,000) shall be distributed as set forth in subdivision (i)(4)(B). No other moneys may be maintained in such account except for any interest income generated by such account. Moneys in this account must only be used for law enforcement and prosecutorial purposes consistent with governing federal law. Such accounts shall be subject to audit by the Division of Legislative Audit.
 (B) Any balance over two hundred fifty thousand dollars ($250,000) shall be forwarded to the Arkansas Drug Director to be transferred to the State Treasury for deposit in the Special State Assets Forfeiture Fund where it shall be maintained separately and distributed consistent with governing federal law.
A.C.A. § 5-64-505 (i)(4)(A) and (B) (Supp. 1999). (Emphasis added).
The subsection above clearly defers to federal law in the holding and use of proceeds received from federal forfeitures. It requires funds received from federal forfeitures to be held separately from other funds, whether at the local level or in the state treasury. It restricts the expenditure of any proceeds received by the prosecuting attorneys and law enforcement agencies at the local level to purposes consistent with federal law. It also states that the federal proceeds transferred to the state treasury shall be distributed consistent with federal law. On its face, therefore, the subsection above is not inconsistent with federal law.
The United States Code authorizes the transfer of federally forfeited property to state or local law enforcement agencies. See21 U.S.C. § 881(e)(1)(A) (as to Department of Justice ("DOJ") forfeitures).See also 19 U.S.C. § 1616a (as to Treasury Department forfeitures) and 18 U.S.C. § 981(e) (as to Department of Justice, Department of Treasury, and United States Postal Service forfeitures). The federal law requires that the value of property transferred "bear a reasonable relationship to the degree of participation of the State or local agency in the law enforcement effort resulting in the forfeiture. . . ." 21 U.S.C. § 881(e)(3)(A). See also,19 U.S.C. § 1616a(c)(1)(B)(i).
There are no federal regulations, however, (i.e., no further federal "law") governing the requirements which must be met in order for the federal government to transfer federally forfeited property to a state or local law enforcement agency. There are, to my knowledge, two extensive publications of the federal government containing requirements in this regard in the form of "Guides." See "A Guide to Equitable Sharing ofFederally Forfeited Property for State and Local Enforcement Agencies" (March, 1994, published by the Executive Office for Asset Forfeiture, Office of the Deputy Attorney General); and "Guide to Equitable Sharingfor Foreign Countries and Federal, State, and Local Law EnforcementAgencies" (October 1, 1996, published by the Executive Office for Asset Forfeiture, Office of the Under Secretary of the Treasury (Enforcement)). These Guides contain comprehensive requirements as to the accounting, transfer and use of forfeited property transferred from the federal government to a state or local law enforcement agency. Chief among the requirements is that any federally transferred property be held separately. This requirement appears to be satisfied by the Arkansas statute. See A.C.A. § 5-64-505(i)(4), above. The Guides also restrict theuse of the proceeds of federally transferred property. Again, the Arkansas statute requires that any federal forfeiture proceeds be used consistently with federal law. See A.C.A. § 5-64-505(i)(4), above. Another requirement in the DOJ Guide addresses the "permissible pass-through" of shared cash, proceeds, or tangible property to other governmental agencies. The Guide notes that although state or local agencies may not generally pass-through such items, there are four types of transfers that are now permitted. The Guide restricts cash transfers to "up to fifteen percent of [the state or local agency's] shared monies; and/or in `windfall situations' (where federal sharing transfers represent over 25 percent of a state or local agency's annual budget), [to] any amount over the 25 percent level." Your question appears to be whether the requirement found in A.C.A. § 5-64-505(i)(4) that any balance over $250,000 from a federal forfeiture be transferred to the state treasury will contravene this federal requirement.
In response to your question, these "Guides" are publications to aid in the administration of the federal forfeiture programs. They are not, in this regard, "federal law" in the sense that a state statute could "conflict with" them. In my opinion, therefore, there is nothing in A.C.A. § 5-64-505(i)(4) that conflicts with "federal law." A question remains, however, as to whether these federal agencies will exercise their discretion, in a particular case, to transfer property to Arkansas state and local law enforcement agencies. This question will depend upon whether compliance can be had, as a practical matter, with all applicable federal guidelines required by these agencies, or is otherwise allowed within the discretion of these agencies. This is not a question of law that can be answered in a legal opinion, but is one which must be determined with reference to a particular transfer of federal forfeiture moneys and through interaction of the federal agencies with the officials responsible for seeking and administering the transfer of federal funds.
Question 4 — Where law enforcement only seizes firearms and drugs and noother property subject to forfeiture under § 5-64-505(a), does Arkansaslaw require law enforcement to file a confiscation report and theprosecuting attorney to file a civil forfeiture complaint in order toretain the firearm for official use? In this situation, could a firearmbe considered contraband under § 5-5-101 and be ordered destroyed orretained for official use under the criminal case? In the alternative, ifthe firearm is considered to be subject to forfeiture under § 5-64-505,and the firearm is later sold, where is the money deposited? If thefirearm is later sold, does the $20,000 cap pursuant to §5-64-505(i)(1)(i) apply to the proceeds? In addition, does the 20% of theproceeds of the sale to the Crime Lab under § 5-64-505(h)(1)(A)(i) applyto the sale of a firearm after retention for official use?
It is my opinion that the answer to the first part of this question is "yes." In my opinion A.C.A. § 5-64-505(h)(1)(A)(v) indicates that a firearm will only be retained for official use after a proper order of the circuit court under subsection (h). That subsection is entitled "final disposition" and it enumerates the options of the circuit court when it finds that grounds for forfeiture of "property" exist. The first option available to the court is to allow the law enforcement agency or prosecuting attorney to retain the property for official use. A.C.A. §5-64-505(h)(1)(A). Certain restrictions apply. A.C.A. §5-64-505(h)(1)(A)(i), (ii), (iii), (iv) and (vi). Subsection (v) of A.C.A. § 5-64-505(h)(1)(A) provides that "[a]ll firearms not retained for official use shall be disposed of in accordance with state and federal law." This provision, in my opinion, recognizes that firearms may be "retained for official use" under A.C.A. § 5-64-505(h)(1)(A) (that is, pursuant to order of the circuit court), and if not so retained, shall be disposed of in accordance with law. The only way to obtain such a circuit court order is for the prosecuting attorney to file the requisite complaint. A.C.A. § 5-64-505(g). The complaint shall include a copy of the "confiscation report." A.C.A. § 5-64-505(g)(2). In my opinion, therefore, a confiscation report and a complaint filed by the prosecuting attorney must precede the retention of a firearm for official use.
In my opinion firearms may also fall within the more general description of the types of property subject to forfeiture enumerated in subsection (a) of the statute. That subsection includes, among other things, "[a]ll raw materials, products, and equipment of any kind which are used or intended for use, in manufacturing, compounding, processing, delivering, importing or exporting any controlled substance or counterfeit substance in violation of this chapter." A.C.A. § 5-64-505(a)(2). In my opinion a firearm may fall within the description of "equipment of any kind" used or intended for use in the delivering, importing or exporting of any controlled substance. Cf. 21 U.S.C. § 881 (rendering firearms "used or intended to be used to facilitate the transportation" of controlled substances subject to forfeiture). Regardless of the failure to expressly enumerate firearms in subsection (a), however, it is my opinion that the specific reference to firearms in A.C.A. § 5-64-505(h)(1)(A)(v) overcomes any ambiguity about whether firearms are subject to the new procedures outlined in Act 1120.
It is my opinion that the answer to the second part of your second question is "no." "Contraband" is defined in A.C.A. § 5-64-505(b) as including certain controlled substances, certain species of plants from which certain controlled substances may be derived, and drug paraphernalia and counterfeit substances. These items may be seized and "summarily forfeited" to the State. A.C.A. § 5-64-505(b). Firearms are not mentioned. Firearms are mentioned and included as "contraband" in A.C.A. § 5-5-101 and that statute allows "the court"[1] in its discretion, to allow the retention of the firearm for law enforcement purposes. Section 5-5-102, however, provides that "[w]hen a statute not a part of this code specifies procedures for the disposition or destruction of a particular type of seized property, the seized property shall be disposed of or destroyed in accordance with that statute." The "Controlled Substances Act" is not a part of the "Criminal Code." See
note, A.C.A. § 5-1-101. Act 1120 amends A.C.A. § 5-64-505, a portion of the "Controlled Substances Act." It, therefore, rather than A.C.A. §5-5-101, governs the disposition of firearms forfeited in conjunction with drug offenses.
In my opinion the third part of your fourth question is governed by A.C.A. § 5-64-505(h)(1)(A)(i). This provision states that: "[a]t the end of the period of retention, the property shall be sold as provided in subdivision (h)(1)(B), and eighty percent (80%) of the proceeds shall be deposited in the drug control fund of the retaining agency and twenty percent (20%) of the proceeds shall be deposited into the State Treasury as special revenues to be credited to the Crime Lab Equipment Fund."
In my opinion the answers to the fourth part of your forth question is "no." The $20,000 cap discussed in A.C.A. § 5-64-505(i)(1)(A)(i) does not apply to the proceeds arising from the sale of property retained for official use because the $20,000 cap applies to moneys in the "asset forfeiture fund" of the prosecuting attorney. When property which has been retained for official use is eventually sold, eighty percent of the proceeds go directly into the "drug control fund" of the retaining agency. A.C.A. § 5-64-505(h)(1)(A)(i). These proceeds, therefore, bypass the asset forfeiture fund, and are not counted for purposes of the $20,000 cap found in (i)(1)(A)(i). In any event, however, twenty percent of the proceeds of every eventual sale of retained property goes to the State Crime Laboratory Equipment Fund, irrespective of whether $20,000 has accumulated. Again, this is required by A.C.A. §5-64-505(h)(1)(A)(i). Thus, the State Crime Laboratory Equipment Fund gets its twenty percent of the proceeds of every sale of retained property pursuant to A.C.A. § 5-64-505(h)(1)(A)(i), and there is no need to apply the $20,000 cap of A.C.A. § 5-64-505(i)(1)(A)(i). Consistent with the discussion above, in my opinion the answer to the fifth part of your fourth question is "yes."
Question 5 — If a firearm and drugs are seized, and the firearm isdetermined to be subject to forfeiture under § 5-64-505(a), how does Act1558 of 1999 effect [sic] the custody of the property prior todisposition pursuant to § 5-64-505(e)? Is a transfer receipt required per§ 5-64-505(e)(2)?
It is my opinion that Act 1558 of 1999, the pertinent part of which is codified at A.C.A. § 12-12-324 (Supp. 1999), imposes a preliminary requirement for all firearms that come into the custody of law enforcement agencies. The act is entitled "An Act to Develop a Database for Tracing Firearms Used in the Commission of Crime; and for Other Purposes." It requires, in Section 1, all firearms which come into the custody of law enforcement agencies to be delivered to the State Crime Laboratory within thirty calendar days. See A.C.A. § 12-12-324(a)(1)(A). This requirement applies unless the firearm is being used as evidence in a criminal case, in which event the delivery of the firearm to the State Crime Laboratory is to be within thirty calendar days after the final adjudication of the criminal proceeding. A.C.A. § 12-12-324(a)(1)(B). The State Crime Lab then conducts ballistics testing on the firearm and inputs the data into the National Integrated Bullet Identification Network of the Federal Bureau of Investigation. A.C.A. §12-12-324(b)(1)(A).
Subsection (e) of A.C.A. § 5-64-505, the portion of the new forfeiture act (Act 1120) you cite above, provides for custody of seized property by law enforcement agencies pending disposition by the circuit court. It provides the seizing law enforcement agency with a number of options with respect to custody pending an order of the circuit court. One of those options is found at A.C.A. § 5-64-505(e)(1)(D) and it authorizes the law enforcement agency to "[p]rovide for another agency or custodian, including an owner, secured party, mortgagee, or lienholder, to take custody of the property. . . ." It appears that Act 1558 of 1999, with its requirement to deliver the firearm to the State Crime Lab, would require the law enforcement agency to transfer custody of the firearm under A.C.A. § 5-64-505(e)(1)(D). In my opinion a transfer receipt is required by A.C.A. § 5-64-505(e)(2), which provides that "in all cases of transfer of property, a transfer receipt shall be prepared by the transferring agency." When the State Crime Lab completes its testing and recordation of the results, the firearm is returned to the law enforcement agency. See A.C.A. § 12-12-324(b)(4).
In my opinion, these two acts can be employed simultaneously. Custody of the firearm must be transferred pursuant to Act 1558, but this fact does not preclude the filing of a complaint for forfeiture under A.C.A. §5-64-505(g) by the prosecuting attorney. Once the firearm is returned from the State Crime Laboratory it may be retained or sold as the circuit court may direct. See A.C.A. § 5-64-505(h). This construction of the two acts gives effect to each, pursuant to A.C.A. § 1-2-207(b)(1) and (2).
Question 6 — Is a confiscation report required if a vehicle is impoundedpursuant to a law enforcement agency policy and not for the purpose offorfeiture?
In my opinion the answer to this question is "no." Section 5-64-505(f)(2) governs the preparation of a "confiscation report." It provides that "[w]hen property is seized for forfeiture by a law enforcement agency, the seizing officer shall prepare and sign a confiscation report." (Emphasis added). Your sixth question does not appear to involve a situation in which property is seized "for forfeiture." In my opinion, therefore, the requirement of a confiscation report in such circumstances is inapplicable.
Question 7 — How frequently does money have to be sent to the Crime Labfund per § 5-64-505(i)(1)(A)(ii)?
In my opinion this question is not clearly addressed in the subsection you reference. Subsection (i) provides that the proceeds of any sale and moneys forfeited or obtained by judgment or settlement under Chapter 64 of Title 5 shall be deposited in the "asset forfeiture fund" of the prosecuting attorney. It also provides that if, during a calendar year, the aggregate amount of moneys deposited in this fund exceeds twenty thousand dollars per county, the prosecuting attorney must, within fourteen days, notify the circuit judges in the district and the Arkansas Drug Director. A.C.A. § 5-64-505(i)(1)(A)(i). The next subsection, the one you reference (A.C.A. § 5-64-505(i)(1)(A)(ii)), provides that "[s]ubsequent to the notification . . . twenty percent of the proceeds of any additional sale and any additional moneys forfeited or obtained by judgment or settlement under this chapter in the same calendar year shall be deposited into the State Treasury as special revenues to be credited to the Crime Lab Equipment Fund. . . ." Twenty percent of any subsequent amount forfeited and deposited into the asset forfeiture fund must thus be forwarded to the Crime Lab Fund in the state treasury. Your question is how frequently this must be done. The statute does not speak directly to this point. It may, in my opinion, be reasonably interpreted as imposing a "forfeiture by forfeiture" deposit requirement, unless the prosecutors, the Drug Director, and the State Treasurer can, consistent with the statute, reach some other agreeable arrangement.
Question 8 — If a law enforcement agency or prosecuting attorney receivesa share of money from an out-of-state forfeiture, should it be depositedin a separate account? Do the $20,000 and the $250,000 caps apply?
The answer to this question is likewise unclear under Act 1120, but it can be argued that such funds are not subject to the "caps" set out in A.C.A. § 5-64-505(i). Subsection (i)(1)(A) of the statute requires "the proceeds of any sale and any moneys forfeited or obtained by judgment or settlement under this chapter" to be deposited into the prosecutor's "asset forfeiture fund." This is the fund to which the $20,000 and $250,000 caps apply. It is arguable that moneys received from a share of an out-of-state forfeiture do not fall within this language because the moneys do not constitute moneys "forfeited or obtained by judgment or settlement under this chapter" but through the provisions of another state's law. In such case, in my opinion, it can be reasonably concluded that the law does not require the deposit of such moneys into the "asset forfeiture fund," but rather, allows their direct deposit into the "drug control fund" of the respective law enforcement agency. I find no legal requirement that the funds be deposited in a "separate account." This is a matter of accounting practice.
Question 9 — Does § 5-64-505(h)(3) apply to any subsequent ordersregarding disposition of property, e.g., (h)1) (A) (ii)?
In my opinion the answer to this question is "yes." Subsection (h) of A.C.A. § 5-64-505 is entitled "final disposition" and it governs the orders made by the circuit court after a forfeiture complaint is filed. The subsection gives the court a couple of options in directing the disposition of forfeited property and then states in subsection (h)(3) that "[w]ithin three (3) business days of the entry of the order, the circuit clerk shall forward to the Arkansas Drug Director copies of the confiscation report, the court's order, and any other documentation detailing the disposition of the seized property." Your question is whether this notification requirement also attaches with regard to later orders of the circuit clerk, such as one entered to order the sale of retained property which was improperly used for personal use. See A.C.A. § 5-64-505(h)(1)(A)(ii).
In my opinion the notification requirement of (h)(3) applies to subsequent circuit court orders affecting the forfeited property. The purpose of the notification provision appears to be to apprise the State Drug Director of the status of forfeited property statewide. Notification of orders regarding the subsequent sale or continued retention of such property is necessary in my opinion to accomplish this legislative objective.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] This reference is presumably to the court with jurisdiction of the underlying criminal offense.