The Honorable Henry H. Boyce Prosecuting Attorney Third Judicial District 208 Main Street, Suite 30 Newport, AR 72112
Dear Mr. Boyce:
I am writing in response to your request, communicated through Deputy Prosecutor M. Joseph Grider, for my opinion on a question I will paraphrase as follows:
 Do the provisions of A.C.A. 5-5-101(d), as amended by Act 135 of 2003, require the City of Pocahontas to deposit proceeds from the sale of thirty-nine (39) unclaimed seized firearms into the general fund, or is the City still bound to follow ACA 24-11-415 as set out in Op. 97-218?
RESPONSE
The answer to this question will depend upon what law enforcement agency seized the firearms and under what provision of law they were seized. Regardless of what law enforcement agency seized the firearms, if they were confiscated pursuant to the Controlled Substances Act, A.C.A. §5-64-101 et seq., the proceeds of their sale should be distributed pursuant to the scheme set forth at A.C.A. § 5-64-505. If the weapons were seized by a city our county agency under some other provision of law, I believe A.C.A. § 5-5-101 would control, either as amended byAct 135 of 2003 or in its unamended form, depending upon the date of the seizure. By contrast, if the weapons were seized by the Arkansas State Police, I believe A.C.A. § 24-11-415 would control. Having offered this opinion, I should note that the law on this question is highly confusing and needs clarification.
Section 24-11-415 of the Arkansas Code, as amended by Act 1349 of 2003, deals with the distribution of proceeds realized from the sale of goods confiscated within city limits. The statute provides in pertinent part:
 (a)(1) In all cities and towns, all goods confiscated by a police officer of the city or by the sheriff or Arkansas State Police within the city that are no longer needed as evidence shall be sold at auction, the auction to be held at least annually or more often if the city determines appropriate, and the proceeds derived from the sale of all confiscated goods shall be deposited in the city's policemen's pension and retirement fund.
 (2) Subdivision (a)(1) of this section shall not supercede [sic] any existing provisions of law governing the disposition of confiscated goods.
Section 5-5-101 of the Arkansas Code, as amended by Act 135 of 2003, which relates to the disposition of contraband and seized property, provides in pertinent part:
 (a) All seized property shall be returned to the rightful owner or possessor thereof except contraband owned by a defendant.
(b) Contraband includes:
(1) Any article possessed under circumstances prohibited by law;
 (2) Any weapon or other instrumentality used in the commission or attempted commission of a felony; and
(3) Any other article designated contraband by law.
 (c) Contraband shall be destroyed, except that any article of contraband capable of lawful use may in the discretion of the court having jurisdiction be retained for use by the law enforcement agency responsible for the arrest or sold, and the proceeds disposed of, in the manner provided by subsections (e), (f), and (g) of this section.
 (d) Unclaimed seized property shall be sold at public auction to be held by the chief law enforcement officer of the county, city, or town law enforcement agency having seized the property or the chief law enforcement officer's designee, and the proceeds, less the cost of sale and any storage charges incurred in preserving it, shall be paid into the general fund of the county, city, or town whose law enforcement agency performed the seizure.
* * *
 (g) The proceeds from any sale of seized property shall be delivered to the county, city, or town treasurer, as the case may be, to be held by him in a separate account for a period of three (3) months. If, during this time, any person establishes to the satisfaction of the treasurer that he was at the time of sale the owner of any seized article sold as above provided, he shall be paid the amount realized from sale of such property less the expenses of the sale. All moneys in the separate account not claimed or paid within the designated three-month period shall be paid into the general fund of the county, city, or town whose law enforcement agency performed the seizure.
Section 5-5-102 of the Code further provides:
 When a statute not a part of this code specifies procedures for the disposition or destruction of a particular type of seized property, the seized property shall be disposed of or destroyed in accordance with that statute.
Section 24-11-415 as amended provides that all goods confiscated within city limits must be auctioned off and the proceeds deposited in the city's policemen's pension and retirement fund. However, A.C.A. §24-11-415(a)(2) qualifies this statute by providing that it shall not supersede any legislation providing for a different disposition of confiscated goods. Section § 5-5-101 as amended indeed dictates a different distribution scheme with respect to proceeds realized from the sale of "contraband" as defined in the statute: pursuant to subsection (g) of the statute, such proceeds are to be held for three months in a separate account subject to possible redemption by the rightful owner(s) of the sold property and then "paid into the general fund of the county, city, or town whose law enforcement agency performed the seizure." However, A.C.A. § 5-5-102 qualifies this provision by declaring that it will not control if some other provision of law calls for a different disposition of the proceeds. A question arises, then, regarding which of these two statutes controls with respect to firearms confiscated within city limits.
In the attached Ark. Op. Att'y Gen. No. 97-218, one of my predecessors opined that A.C.A. § 24-11-415 controls over A.C.A. § 5-5-101 under these circumstances. In support of his opinion, my predecessor observed: "This conclusion is supported by § 5-5-102, the rule of statutory interpretation that a general statute must yield when there is a more specific statute involving the particular subject matter, and the fact that § 24-11-415 was enacted after 5-5-101."
Legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State, 315 Ark. 1, 864 S.W.2d 859 (1993); City ofFort Smith v. Tate, 311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly. Uilkie v. State,309 Ark. 48, 827 S.W.2d 131(1992); Love v. Hill, 297 Ark. 96, 759 S.W.2d 550
(1988).
When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; Ward SchoolBus Mfg., Inc. v. Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977). Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith,268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session, Sargent v.Cole, 269 Ark. 121, 598 S.W.2d 749 (1980), although, in such a case, the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v.Gates, 180 Ark. 96, 21 S.W.2d 406 (1929). With respect to such acts, A.C.A. § 1-2-207(b) (Supp. 2001) provides:
 When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.
However, in Citizens to Establish a Reform Party v. Priest,325 Ark. 257, 926 S.W.2d 432 (1996), the court held that the "last passed" rule should have no application when "nonamendatory re-enactments" are at issue. Moreover, as the court noted in Priest, 325 Ark. at 265: "When an act amends the law, portions of the law that are not amended but simply retained are not thought of as new enactments. Peterson Produce Co. v.Cheney, 237 Ark. 600, 374 S.W.2d 809 (1964)." Accord Bourne v. Board ofTrustees, 347 Ark. 19, 59 S.W.3d 432 (2001); see also Ark. Ops. Att'y Gen. Nos. 2001-395 and 2001-386.
I question whether my predecessor's analysis Opinion 97-218 still applies in the wake of the legislature's amendment of the pertinent statutes pursuant to Acts 135 and 1349 of 2003. As noted above, Act 135, which was approved on February 17, 2003, amended A.C.A. § 5-5-101 to provide, interalia, that if a city law enforcement agency seizes and auctions off property, the proceeds must go into the city's general fund. By contrast, Act 1439, which was approved on April 14, 2003, did not amend the provision of the statute requiring that proceeds from the auction of property seized in the city go into the city's policemen's pension and retirement fund. There is a clear conflict between the two statutes with respect to the distribution of the proceeds of auctions of property seized by city or county law enforcement agencies. Under A.C.A. §5-5-101, these proceeds must go into the city's general fund if a city agency effected the seizure and into the county's general fund if a county agency effected the seizure. By contrast, under A.C.A. §24-11-415, the proceeds must go into the policemen's pension and retirement fund irrespective of which agency effected the seizure.
Applying the above stated principles of statutory construction, I believe the provisions of A.C.A. § 5-5-101 should control in this instance with respect to seizures made by city or county law enforcement officers. I appreciate that Act 1349, which amended A.C.A. § 24-11-415, was approved later than Act 135, which amended A.C.A. § 5-5-101. I further appreciate, as my predecessor pointed out in Opinion No. 97-218, that A.C.A. § 24-11-415 might be characterized as more directly addressing the issue in your request, since it deals exclusively with the disposition of property seized in a city, whereas A.C.A. § 5-5-101 deals with the disposition of seized property in general. However, with respect to the particularity of the legislation, one might as readily suggest that A.C.A. § 5-5-102 deals more directly than A.C.A. § 24-11-415 with the subject of your request, since it specifically addresses the disposition of seized contraband — a category that presumably includes the firearms referenced in your question — as opposed to seized property in general. Whatever the appropriate analysis on the issue of particular as opposed to general legislation, I am struck by the fact that the amended portion of Act 1349 did not address how auction proceeds would be distributed; rather, it merely redefined what category of confiscated goods would be subject to auction. Act 135 specifically amended the portion of A.C.A. §5-5-101 dealing with the distribution of auction proceeds, providing that henceforth such proceeds must go into the general fund of the city if a city law enforcement agency performed the seizure and into the general fund of the county if a county law enforcement agency performed the seizure. The legislature's last word on the distribution of such proceeds, then, was in Act 135, suggesting that A.C.A. § 5-5-101 should apply. I must note, however, that these statutes are extremely confusing when read together and would greatly benefit from legislative clarification.
I must stress that the opinion expressed in the preceding paragraph applies only to proceeds realized from the sale of goods seized by city or county law enforcement agencies. The amendatory language of Act 1349 specifically defines its subject matter as being "all goods confiscated by a police officer of the city or by the sheriff or Arkansas State Police
within the city that are no longer needed as evidence. . . ." (Emphasis added.) Under an unamended portion of A.C.A. § 24-11-415, regardless of which agency effected the seizure, the proceeds of the sale are to be paid into the policemen's pension and retirement fund. By contrast, the amendatory language of Act 135 defines the subject goods to be unclaimed property seized by a "county, city, or town law enforcement agency," with the auction proceeds to "be paid into the general fund of the county, city, or town whose law enforcement agency performed the seizure." The statute at no point mentions the disposition of goods seized by the Arkansas State Police. Accordingly, again applying the above principles of statutory construction, I believe goods seized within a city by the Arkansas State Police should be auctioned and the proceeds distributed pursuant to A.C.A. § 24-11-415.
To further complicate matters, my conclusion that A.C.A. § 5-5-101 should control with respect to seizures made by city or county officers in itself does not resolve the question of what entity should receive the proceeds of the sale of the firearms at issue in your request. Prior to the enactment of Act 135 of 2003, A.C.A. § 5-5-101 (Repl. 1997) provided that the sheriff of the county in which the seizure took place would auction the contraband, following which the proceeds would be placed in that county's general fund. As noted above, Act 135 amended the referenced statute by providing that the chief law enforcement officer of the political subdivision whose agents made the seizure must conduct the auction, with the proceeds to be paid into the general fund of that political subdivision.[1] The question arises, then, whether contraband seized prior to the effective date of Act 135 but not yet auctioned off should be auctioned and the proceeds distributed pursuant to A.C.A. §5-5-101 as it read before the effective date of Act 135 or as the statute currently reads. Stated differently, the question is whether Act 135 should be given retroactive effect.
In my opinion, the answer to this question is "no." This issue is virtually identical to one addressed in Ark. Op. Att'y Gen. No. 99-282, in which one of my predecessors opined that the forfeiture law in effect at the time of a seizure, not the law in effect at the time of disposing of the forfeited goods, should control with respect to property seized under the Uniform Controlled Substances Act, A.C.A. § 5-64-101 et seq.
(Repl. 1997 Supp. 2001). In rendering this opinion, my predecessor observed:
 Act 1120 of 1999 became effective on July 30, 1999. See Op. Att'y Gen. 99-120. Your question has reference to seizures that occurred prior to this date. The issue presented, therefore, is one concerning the "retroactivity" of the legislation. It is well established that legislative enactments will ordinarily be deemed to apply prospectively only, unless the intent for retroactive application is clearly expressed. See Abrego v. United Peoples Fed. Sav. Loan, 281 Ark. 308, 664 S.W.2d 858 (1984). Legislation will not be construed as being retroactive if it may reasonably be construed otherwise, and any doubt is resolved against retroactive application. Arkansas Rural Medical Student Loan Scholarship Bd. v. Luter, 292 Ark. 259, 729 S.W.2d 402
(1987). An exception to the general rule of prospective application applies in the case of procedural or remedial legislation that does not disturb vested rights or create new obligations. Harrison v. Matthews, 235 Ark. 915, 362 S.W.2d 704 (1962). Even remedial legislation may not be applied retroactively, however, unless the legislature's intent is so clear, strong and imperative as to have no other meaning. Luter, supra.
Subject to the qualification discussed immediately below, it follows that firearms seized by city or county officers prior to July 16, 2003 — the effective date of Act 135 — should be sold and the proceeds distributed pursuant to the procedure set forth in the unamended A.C.A. § 5-5-101, whereas firearms seized following this date should be sold and the proceeds distributed pursuant to A.C.A. § 5-5-101 as amended by Act 135.
Finally, I must qualify the foregoing analysis by noting that any firearms seized pursuant to the Controlled Substances Act should be disposed of in accordance with the provisions of that Act. See the attached Ark. Ops. Att'y Gen. Nos. 2002-247 ("[I]f property is subject to seizure both under the Controlled Substances Act, which is part of the civil code, and under the criminal code, the seizing authorities must observe the procedural requirements set forth in the civil code."); 99-282 (discussing why the Act takes precedence over alternative legislation). Under the Act, subject to the conditions set forth elsewhere at A.C.A. § 5-64-505 (Supp. 2001), "eighty percent (80%) of the proceeds shall be deposited in the drug control fund of the retaining agency and twenty percent (20%) of the proceeds shall be deposited into the State Treasury as special revenues to be credited to the Crime Lab Equipment Fund." A.C.A. § 5-64-505(h)(1)(A)(i).
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosures
[1] Given this change in the law, I believe your question misstates the law in suggesting that "[u]nder A.C.A. § 5-5-101(d), the Sheriff of the County in which the seizure took place is to conduct a sale." As discussed further in my text, I believe your statement is correct only with respect to seizures that took place before the effective date of Act 135, which was July 16, 2003. See Ark. Op. Att'y Gen. No. 2003-119
(reciting this date as the effective date of all legislation not bearing an emergency clause enacted during the Eighty-Fourth Regular Session of the General Assembly).