MORLEY, COMMISSIONER OF REVENUES *v.*
E. E. BARBER CONSTRUCTION CO.

4-9779                          248 S. W. 2d 689

Opinion delivered May 5, 1952.

486

O. T. *Ward*, for appellant.

*Donham, Fulk & Mehaffy* and *R. Ben Allen*, for appellee.

WARD, J. This appeal involves the constitutionality of Act 487 of 1949, commonly called the Use Tax Act, and also involves an interpretation of paragraph (d) of § 6 of the Act.

There is no dispute about the facts, all of which were stipulated, and there is no question about the procedure by which the issues are presented to this court.

Appellee, E. E. Barber Construction Company, a foreign corporation authorized to do business in this state, was engaged in repairing and constructing a portion of the state highway system. Between the dates of April 1st, 1949, and October 30th, 1950, appellee purchased from outside the state $72,569.76 worth of steel, sand and gravel which were used in the construction and became a part of the highway system.

Appellant, the Commissioner of Revenues for the State of Arkansas, sought to collect from appellee the

sum of $1,451.40, being a 2% tax imposed under the Act above mentioned. Pursuant to a provision of the Act, appellee paid the tax under protest and brought suit in the circuit court to recover the same. From an adverse decision appellant prosecutes this appeal.

It is conceded by appellee that it is subject to payment of the imposed tax unless: (1) said Act 487 is unconstitutional; or it is exempt from payment under (2) the first portion or (3) the latter portion of paragraph (d), § 6 of said Act.

## (1)

Is Act 487 of 1949 unconstitutional? Appellee urges that the Act violates § 5, Art. 16 of the State Constitution which provides, in general, that all property shall be taxed according to its value and that the tax must be equal and uniform on the same species of property. It may be conceded that if Act 487 does levy a tax on appellee's *property* in this instance it is not a uniform tax on all steel, sand and gravel owned by the people of this state. Appellee then attempts to show that this tax which the Act imposes on the "storing, using, or consuming" of its said materials is in fact a tax on the property itself.

We have carefully considered the many authorities cited by appellee, many of which certainly contain statements indicating that a tax on the use of property is, in many instances, a tax on the property itself, but we deem it sufficient here to refer to only a few citations.

The case of *Stevens* v. *State,* 2 Ark. 291, contains the following:

"The term *property* has a most extensive signification and, according to its legal definition, *consists in the free use, enjoyment and disposal by a person* of all his acquisitions without any control or diminution, save only by the law of the land."

Mr. Justice BREWER, in *Cleveland, Cin., C. & St. Louis Ry. Co.* v. *Backus,* 154 U. S. 439, 14 S. Ct. 1122, said:

"The value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated."

Mr. Justice McKENNA, in *Block* v. *Hirsh,* 256 U. S. 135, 41 S. Ct. 458, 65 L. Ed. 865, said:

"There can be no conception of property aside from its control and use, and upon its use depends its value."

In *Mann* v. *McCarroll, Com.,* 198 Ark. 628, 130 S. W. 2d 721, occurs this language:

"For instance, in many classes of property, the use of the property is the only material part or fagot, so to speak, inherent therein. In such cases, where the use of the property is the only element of property that gives it value, then there is no refinement or reasoning whereby such use might be taxed without the tax being a tax upon the property itself and not upon some of its attributes."

Notwithstanding the able arguments and persuasive citations presented by appellee we are of the opinion that Act 487 does not violate our state constitution. A summary history of the Act will be helpful in explaining this conclusion. Prior to 1941 the state had a sales tax which imposed a 2% tax on retail sales. It was realized that many transactions, such as rentals, were similar to but not included in the term "sales" and therefore could not be taxed. So the 1941 legislature passed Act 386, known as the Gross Receipts Tax Act, in order to remedy the situation mentioned above. The latter Act however covered only transactions taking place within the borders of the state, and so it soon became apparent that this resulted in discrimination in favor of those who made purchases of personal property in other states for use in this state. To prevent this discrimination Act 487 was passed in 1949. The purpose we have ascribed to Act 487 clearly appears in the emergency clause, and it is indicated by the name given by the legislature, *i. e.,* Compensating Tax. Section 4 defines, among other things, the terms "storage", "use", "vendor" and "purchase", and the first part of § 5 reads as follows:

"(a) There is hereby levied and there shall be collected from every person in this State a tax or excise for the privilege of storing, using or consuming within the State, any article of tangible personal property, after the passage and approval of this Act, purchased for storage, use or consumption in this State at the rate of two (2%) per cent of the sales price of such property." The Sales Tax Act, Act 233 of 1935, was held not to violate Art. 16, § 5 of the constitution in the case of *Wiseman* v. *Phillips*, 191 Ark. 63, 84 S. W. 2d 91. The opinion written by Mr. Justice McHANEY dealing with an issue similar to the one here under discussion, contains this language:

". . . What kind of a tax is it? What is it a tax upon? Some of counsel say that it is a property tax, others that it is an occupation tax and others that it is either a gross income tax or an occupation tax, while another says it has all the earmarks of a property tax. Counsel for appellant and those *amici curiae* supporting that view contend that it is neither a tax on property, an occupation tax, nor a tax on gross income; that it is an excise tax or privilege tax, and the argument is made with some force that it is a tax upon the right to acquire personal property by purchase for use or consumption. It is generally agreed that, unless the tax is prohibited by express language or by necessary implication in the Constitution, it is a valid levy. If it is prohibited, either expressly or impliedly, the prohibition must be found in § 5 of Article 16 of the Constitution. . ."

After citing former decisions of this court, Judge Mc-HANEY said:

"From these decisions we are bound to conclude that the tax levied by said act 233 is an excise tax or privilege tax that is not prohibited. Whether it is such a tax on the purchase or the sale, or the right to acquire personal property for use or consumption, or whether it is a tax on the transaction, it is unnecessary to determine."

In passing on Act 386 of 1941, the Gross Receipts Act, in the case of *Hardin, Com.* v. *Vestal*, 204 Ark. 492, 162

S. W. 2d 923, the court stated that the tax levied by the Act was "an excise or privilege tax".

This court has not heretofore passed on the constitutionality of the Act before us or on any other similar Use Tax Act, but the courts of other jurisdictions have held constitutional similar acts. The State of Washington passed a "Compensating Tax Act" which imposed "a tax of excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935, at the rate of 2% of the purchase price. . . ." This Act was upheld in *Henneford, et al.* v. *Silas Mason Co., Inc., et al.*, 300 U. S. 577, 57 S. Ct. 524, 81 L. Ed. 814, as not being violative of the Interstate Commerce Clause of the Constitution of the United States. It would serve no useful purpose to refer to other cases, but it will suffice to say that many other states have sustained similar Use or Compensating Tax Acts. From 129 A. L. R. 230 we quote:

"In a number of instances it has been held that a use or compensating tax, designed to complement a sales tax, is an excise, not a property tax, and therefore does not violate a provision of the state Constitution relative to property taxes." (Citing cases).

See, also, 153 A. L. R. 615.

## (2)

Although we hold Act 487 is valid, appellee claims it is exempt from payment under § 6(d) of the Act itself. This part of the section exempts "Tangible personal property *used* by *manufactuers* or *processors* or distributors for further processing, compounding, or manufacturing". It is appellee's contention that it should be classed as a *manufacturer* or *processor* because it processes the steel into the desired shape and mixes the sand and gravel with water and cement to produce concrete, all for use in a road or bridge. In other words appellee contends that it is a manufacturer of roads and bridges within the meaning of the exemption clause. We think this is a strained construction and that it is not supported

by the intent of the legislature or the ordinary use of language. The intent of the legislature was that the Use Tax Act [Act 487] would complement or supplement the Gross Receipts Tax Act and [since it taxes personal property bought in other states] that it would protect home merchants and businesses from out of state competition. If appellee's interpretation is accepted the Use Tax Act would not only not complement the Gross Receipts Tax Act but would to a large degree emasculate it. Such an interpretation would be a strong inducement for contractors engaged in building roads [and it would have to include houses and every similar construction] in Arkansas to buy all materials from suppliers in other states, thus avoiding the tax imposed by both Acts. We think also that in the ordinary use of language one does not speak of manufacturing a road, a house, or a football field. Ordinarily we think of a manufactured article as something to be placed on the market for retail to the general public in the usual course of business. We agree with the reasoning in *Comptroller of Treasury* v. *Crofton Company,* 84 Atl. 2d 86, where our view was sustained on a similar point. It was there insisted that the materials going into the construction of a house were exempt from a tax similar to the tax imposed by Act 487 because the house was *manufactured.* In denying this contention the court said:

". . . We must apply the familiar rules that an exemption from taxation must be strictly construed and to doubt is to deny the exemption. The words of the statute permit, but do not compel, a broader construction. Although it may be verbally correct to speak of 'manufacturing a house' this is not common usage. Limited to manufacture of personal property, the exemption is applicable only to transactions which will usually result in a sales tax. This construction is more in accord with the purpose of the use tax."

(3)

Appellee also claims it is exempt from payment of the imposed tax by the language in the latter portion of § 6(d). The pertinent language referred to would exempt

". . . tangible personal property used in the repair . . . or creation of . . . facilities used for public . . . transportation purposes." It will be noted that we took the liberty to make the word "public" qualify the word "transportation". We did so because it is the only reasonable interpretation and because appellee so construes it in its brief.

In its brief appellee says: "It is beyond intelligent argument that a public highway is a facility for transportation purposes", and quotes *Webster* and the case of *Overstreet* v. *North Shore Corp.*, 318 U. S. 125, 63 S. Ct. 494, 87 L. Ed. 656, to show the meaning of the word "facility." Standing alone and disassociated from other considerations, appellee's contention and argument are persuasive; but again, we think the exemption clause must be interpreted in the light of the purpose of the entire Act and the intent of the legislature which passed it. The intent of the Act was to complement the Gross Receipts Tax as was mentioned above, and we think it is clear that the intention of the exemption clause was to encourage investors [in or out of Arkansas] to risk their capital in this state in the businesses of public transmission, public communication and public transportation. Instances of such businesses would be telephone systems, bus lines, and motor freight lines, and the *risk* involved to the invested capital would depend on the ultimate success of the venture as a profitable business. This reasoning will not support appellee's interpretation of the exemption clause. In the first place the capital involved here is the money of the state, and in the second place appellee runs no *risk* that the highway will not be an investment profitable to it. Of course appellee runs the *risk* that it might lose money on its contract with the state, but appellee entered into the contract with a chance and for the purpose of making a profit.

It is inconceivable that the state, which needs highways, needs money, and seeks to favor home industries, intended, by the exemption clause in Act 487, to invest its own funds in such a way that it would not only lose

revenues but would discriminate against home suppliers, and in return reap no special benefits.

The judgment of the lower court is reversed with directions to enter judgment there in favor of appellant for the amount of the tax.

Justice McFADDIN dissents.