PETERSON PRODUCE Co. *v.* CHENEY, COMMR.

5-3172                                           374 S. W. 2d 809

Opinion delivered February 3, 1964.

*Little & Enfield,* for appellant.

*Lyle Williams,* for appellee.

CARLETON HARRIS, Chief Justice. Only one question is involved on this appeal, *viz,* are appellant's purchases of incubators, in 1956, 1957 and 1958, for its commercial hatchery exempt from the Arkansas Compensating (Use) Tax? The Commissioner of Revenues assessed a tax of $1,250.19 against Peterson Produce Company, an Arkansas corporation with principal offices located in Decatur, Benton County, Arkansas, by reason of the purchase of hatchery equipment from outside the state. The company is engaged in a hatchery business at Decatur. The parties stipulated that all legal requirements by the State Revenue Department, concerning the assessment and

establishment of the tax, have been met, and all procedures for resisting such action by appellant have been timely and proper. Following the usual administrative steps, the company instituted suit to restrain collection of the tax as an illegal exaction. On trial, the Benton Chancery Court dismissed appellant's complaint, and from the decree entered, the company brings this appeal.

The tax exemption claimed by the Peterson Produce Company is based on Ark. Stat. Ann. § 84-3106 (d) (Repl. 1960), which sets out certain property that is exempt from the tax. The mentioned sub-section exempts,

"Tangible personal property used by manufacturers on processors or distributors, including ginners of cotton, and including the artificial drying of rice, for further processing, compounding or manufacturing; tangible personal property used for repair, replacement, or expansion of existing manufacturing or processing facilities, including the ginning of cotton, and including the artificial drying of rice or in creating new manufacturing or processing facilities; * * *"

The equipment purchased by the company, and upon which exemption is claimed, consists of incubators used for hatching eggs. These incubators are made up of two separate units, known as setting units and hatching units, and are used in the following manner:

Eggs set in trays are first placed in a setting unit, where they remain for eighteen days under automatically controlled conditions. Temperature in the setting unit is controlled electrically, and uniform temperature is maintained by fans circulating the air in the unit. Humidity is controlled. The units are ventilated to supply oxygen and remove gases given off by the eggs. Eggs in the unit are turned hourly by an electric motor. After the eighteen-day period in the setting unit, the eggs are transferred to a hatching unit where they remain until they have hatched or until it is apparent that the remaining eggs will not hatch. The operation of the hatching unit is similar to the operation of the setting unit;

temperature, humidity, and air are automatically controlled in the hatching unit. After hatching, the chicks are removed from the unit and transported to the place where they will be grown.

Appellant contends that it is a "processor" within the contemplation of the tax exemption provision, and that the Legislature, in enacting the exemption provision, intended to exempt incubators purchased from out of state sources for use by Arkansas hatcheries.

We do not agree. In the first place, we have held that under the statute involved, the word "processing" has reference only to some step or process of manufacturing. *Scurlock, Comm. of Rev.* v. *Henderson*, 223 Ark. 727, 268 S. W. 2d 619. *Pellerin Laundry Machinery Sales Co.* v. *Cheney, Commr.*, 237 Ark. 59, 371 S. W. 2d 524. In the latter case, we stated:

"Appellant emphasizes the word, 'processing,' but in interpreting the pertinent statutes, we do not consider 'manufacturing' and 'processing' as two distinct operations."

We agree with the learned Chancellor, who delivered an excellent opinion at the conclusion of the case, to the effect that one does not "manufacture" a baby chick, and the use of incubators is not a "processing" step therein. As he stated,

"Thus, by plaintiff's [appellant's] view, if he chose to hatch his eggs in the old-fashioned way, by having brooder hens sit on them, his purchase of hens from out of state would be exempt from use tax, because such hens were 'processing' the eggs into chicks. An incubator merely aids and abets the natural course of hatching, and is not a process in itself."

A similar question arose in the case of *Teague* v. *Scurlock, Commr. of Revenues*, 223 Ark. 271, 265 S. W. 2d 528. There, it was contended that feed, purchased for chicks and poults, was exempt. Teague bought day-old chicks and poults, and fed them only commercial poultry feed until such time as they reached a proper size

and weight for marketing. The grower contended that he was a manufacturer of chickens and turkeys, and the commercial feed purchased by him was a process in the "manufacturing" thereof. In denying the exemption, this court said,

"Without lengthening this opinion to state in detail appellant's arguments and our reasons for holding against them, it is sufficient to say that we hold that the statutory language of exemption, as hereinbefore copied, does not afford the appellant any relief, because his business is not such 'processing, compounding or manufacturing' of commercial feed into broilers as is contemplated by the language used in the Statute."

Appellant points out certain exemptions that have been added to the statute by the Legislature, following court decisions which had refused the exemption. For instance, the *Henderson* decision was handed down in 1954. In this decision, the court held that cotton ginners were not exempt. Thereafter, the 1955 Legislature amended the statute to specifically exempt "ginners of cotton." In 1957 the Legislature again amended the statute to exempt "the artificial drying of rice." Other instances of added exemptions by the General Assembly, following decisions of this court, are mentioned. Appellant argues thusly:

"These amendments to the statute by the Legislature, coming as they did after denials of exemptions had been made to specific processors, seem to be a clear pronouncement by the Legislature as to what was meant by the original exemption Act. This pronouncement made it clear that the Legislature did not intend to give the exemption statute the limited construction relied upon by appellee."

We do not agree with this logic, for, though other exemptions were added, the subject matter of this litigation (incubators) was not included. Had the Legislature intended to exempt incubators, purchased from out of state, it could have as well amended the law in that respect as in the instances already cited. Certainly, an

existing law is not presumed to be changed further than is declared in the amendatory act. To the contrary, the presumption is that the Legislature intended no changes other than those clearly expressed in the amendments. *Hendricks* v. *Hodges,* 122 Ark. 82, 182 S. W. 538. The point is discussed in 82 C.J.S., Section 384, Page 903, as follows:

"Where an amendment leaves certain portions of the original act unchanged, such portions rate continued in force, with the same meaning and effect they had before the amendment. So, where an amendatory act provides that an existing statute shall be amended to read as recited in the amendatory act, such portions of the existing law as are retained, either literally or substantially, are regarded as a continuation of the existing law, and not as a new enactment. The amendment of an act does not control the interpretation of another statute enacted prior to the amendment, nor does it change the meaning which the original statute acquired prior to the amendment."

Let it also be remembered that a tax exemption must be strictly construed, "and to doubt is to deny exemption." *Morley* v. *E. E. Barber Construction Co.,* 220 Ark. 485, 248 S. W. 2d 689; *Scurlock, Comm. of Rev.* v. *Henderson, supra.*

We think, under all our decisions, that appellant falls short in establishing that he is a "processor" within the meaning of the Arkansas Compensating (Use) Tax Law exemption provision.

Affirmed.