Reed THOMPSON *v.* William F. "Casey" LAMAN

81-151                                          625 S.W. 2d 507

Supreme Court of Arkansas
Opinion delivered December 21, 1981

*Jim Hamilton,* North Little Rock City Atty., by: *G. Spence Fricke,* Chief Asst. City Atty., for appellant.

*Harmon & Hunnicutt,* by: *John T. Harmon,* for appellee.

JOHN I. PURTLE, Justice. In response to a Petition for a Writ of Mandamus filed by appellee, William F. "Casey" Laman, against the mayor of North Little Rock, Reed Thompson, the Fourth Division Circuit Court of Pulaski County issued the writ directing the appellant to pay appellee $3,100 per month as an annual retirement benefit. On appeal appellant argued that the trial court erred in holding that Act 311 of 1971 was the controlling authority.

The appellee served as mayor of North Little Rock from 1958 through 1972 inclusive. He retired in December of 1972 and received annual retirement pay of $5,000. He was re-elected mayor, serving another 18 months from July 1979 through December 1980. He reached the age of 60 in October of 1973. The North Little Rock City Council provided a 1981 appropriation of $18,600 for appellee's retirement benefits for the 1981 calendar year.

The present mayor, appellant, refused to pay the amount provided in the budget for 1981 and continued the payments at the rate of $5,000 per annum which the appellee had been drawing up until this time.

Of the three acts having a direct bearing on the retirement benefits to be received by the appellee the trial court held that Act 311 of 1971 controlled. The question to be determined by this court is whether such ruling was correct and, if not, which act controls the present factual situation.

We first consider Act 311 of 1971 which was an amendment to Act 403 of 1967, as amended. Section 1 of Act 311 provides as follows:

In all First Class cities of this State, any person who

shall serve as Mayor of such city for a period of not less than ten (10) years, upon reaching the age of sixty (60) or any person who shall serve as Mayor of said city for a period of not less than twenty (20) years without regard to age, shall be entitled to retire at an annual retirement benefit during the remainder of his natural life, payable at the rate of one-half (1/2) of the salary payable to such Mayor at the time of his retirement. Provided, further, that any Mayor of a City of the First Class of this State now or hereafter having a population of 50,000 or more according to the most recent federal census who has served not less than fifteen (15) continuous elected years as Mayor of said City shall, upon reaching age sixty (60), be entitled to an annual retirement benefit during the remainder of his natural life, payable at the rate of his salary received as Mayor at the time of his retirement or at the time said person last served as Mayor. Such retirement payments shall be paid monthly and shall be paid from the city general fund.

When Act 311 was enacted, the constitutional limit on the salary of mayors of cities in any class was $5,000. Therefore, any person retiring under the provisions of Act 311 would be limited to $5,000 at least up until such time as the constitutional limitation was removed. Therefore, it is logical to say that the legislature had in mind that a mayor retiring under this act would never receive more than $5,000 per year.

Section 1 of Act 486 of 1975 contained the same general provisions as the above-quoted section of Act 311. However, the act specifically stated that retirement benefits under the act should not exceed the annual salary prescribed for the mayor of the city involved on January 1, 1975. On this date the salary of the mayor of North Little Rock was $5,000. Section 2 provided for the retirement of mayors of the city of the first class. However, § 2 was completely repealed by Act 819 of 1977. Act 819 of 1977 provides:

Any mayor of a city of the first class in this State having a mayor-council form of government and having a

population of thirty-five thousand (35,000) or more residents according to the most recent federal decennial census, who served as mayor of such city for a period of not less than ten (10) years upon reaching the age of sixty (60), or any person who shall serve as mayor of said city for a period of not less than twenty (20) years without regard to age, shall be eligible to retire at an annual retirement benefit during the remainder of his or her natural life, payable at the rate of one-half (1/2) the salary payable to such mayor at the time of his retirement, or five thousand dollars ($5,000) per year, whichever is greater, and any person who meets or has met the requirements of this Section and who may have previously retired under any other provision of law for the retirement of mayors shall be entitled to elect to receive benefits under his section.   . . .

The Preamble to Act 819 of 1977 stated its purpose was to change retirement eligibility requirements for mayors of first class cities having a population of 35,000 or more. Act 819 attempted to clarify whatever may have been the requirements for retirement prior to its enactment. Act 819 also had a repealing clause. Nothing contained in the act required or even allowed a city to set up a retirement system. It simply set forth the terms under which a retiring mayor would be eligible to receive benefits of up to one-half his salary or $5,000 per year. Act 819 of 1977 was passed after authority had been granted cities to allow mayors' salaries to exceed $5,000 pursuant to Amendment 56 § 4, which had an effective date of January 1, 1977. Therefore, the provision that a retiring mayor could receive one-half of the salary payable to such mayor at the time of his retirement was the first time the General Assembly addressed the subject after mayors had been authorized to receive salaries in excess of $5,000. It is not our place to judge the wisdom of the legislature in constructing legislative action but it is our duty to exercise our own judgment in determining the legislative intent and in doing so one criterion is whether the result we reach makes sense. *Page* v. *Highway No. 10 Water Pipe Line Improvement District No. 1*, 201 Ark. 512, 145 S.W. 2d 344 (1940). We know of no situation in which the legislature has ever provided for the retirement of an official

at full salary except for the period of time Act 311 of 1971 authorized retirement at full salary to a maximum of $5,000. The subsequent action by the General Assembly obviously intended to reduce the upper limits of a retiring mayor to an amount which would not exceed one-half of the salary he was receiving at the time of his retirement.

We believe this matter is properly considered in the light of the case of *Nance* v. *Williams*, 263 Ark. 237, 564 S.W. 2d 213 (1978), wherein we said:

> Repeals by implication are, of course, not favored. This case, however, falls within the rule that when a later act covers the entire subject matter of an earlier one, adding new provisions and plainly showing that it was intended as a substitute for the first one, then the older act is repealed by implication. *Forby* v. *Fulk*, 214 Ark. 175, 214 S.W. 2d 920 (1948).

For the foregoing reasons we remand to the circuit court with directions to proceed in a manner not inconsistent with this opinion.

Reversed and remanded.

ADKISSON, C.J., HOLT and HICKMAN, JJ., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. The majority has held that Act 311 has no application in this case because it has been repealed by implication by Act 486 of 1975 (A.S.A § 19-1035.1—19-1035.3 [Repl. 1980]). I disagree. It is well settled in Arkansas and elsewhere that repeals by implication are not favored. *Bartlett* v. *Willis*, 147 Ark. 374, 227 S.W. 596 (1921); *Anderson-Tully Co.* v. *Murphree*, 153 F. 2d 874 (1946). It is equally well settled that statutes relating to the same general subject must be construed together and, if possible, effect must be given to each. *McFarland* v. *Bank of State*, 4 Ark. 410 (1842); *Thompson* v. *Road Improvement Dist.*, 139 Ark. 136, 213 S.W. 386 (1919). There is a presumption that the legislature intended no changes other than those clearly expressed. *See Hendricks* v. *Hodges*, 122 Ark.

82, 182 S.W. 538 (1916); *Peterson Produce Co.* v. *Cheney, Comm'r,* 237 Ark. 600, 374 S.W. 2d 809 (1964).

Both Act 311 of 1971 and Act 486 of 1975, as amended, pertain to retirement benefits for mayors in cities of the first class. However, there is a fundamental distinction between these two acts. Act 311 is mandatory legislation and applies generally to mayors in all first class cities. Whereas, Act 486, § 1 provides specifically that "the provisions of this Act shall be permissive;" § 3 further provides that any first class city "may, upon adoption of an ordinance therefor, establish a retirement system for the mayor of such city in accordance with the provisions of this Act."

Since these acts relate to the same subject matter, it is our duty to reconcile them and permit both to stand if possible; and since there was no express repeal of the 1971 Act by the 1975 Act, we must hold they are different types of legislation (mandatory—permissive) and exist separately with the latter act being cumulative to the first. *Ward* v. *Harwood,* 239 Ark. 71, 387 S.W. 2d 318 (1965).

It is not the role of this Court to determine the wisdom of legislative enactments but to determine their constitutionality and effect — here it is to determine the viability of Act 311 of 1971. Our rules of statutory construction applicable to this case are so well settled that they have been recognized as such by other courts, *see Anderson-Tully Co.* v. *Murphree, supra.* To exclude appellee from this Court's consistently applied and settled law deprives him of equal protection of the law.

I am hereby authorized to state that HOLT, J., joins me in this dissent.

DARRELL HICKMAN, Justice, dissenting. I wholly agree with the dissent filed in this case by the Chief Justice but feel compelled to emphasize my disagreement with the majority's decison. The result in this case was probably not expected by either of the parties to this litigation. At least there is no evidence of that fact. Nor is it likely that the proponents of the legislation foresaw the possible distorted

results that could be caused by their deeds. But the result to be reached should be the least concern to this court. It is not the end that should concern this court but the means used to arrive at the end result. To do otherwise is to commit that unpardonable sin of "legislating."

The *only* issue is whether Act 311, passed in 1971, is still the law. It has not been repealed by any subsequent Act. Neither Act relied upon by the City of North Little Rock can replace it by implication because those Acts do not *grant* any retiree a pension, they only *permit* a city to pass an ordinance allowing a pension. Those are two separate and distinct propositions. Act 311 *granted* a pension we cannot void. Only the General Assembly can change that Act.

The confusing legislation that exists regarding the retirement benefits to be granted to mayors of first class cities was probably caused by two things: The approach that the General Assembly takes in such matters, and the failure of the cities to monitor and police legislation that affects them.

Neither party raised the question of whether any of this legislation was local or special in violation of ARK. CONST. amend. XIV. Therefore, we cannot consider that question. The Acts may or may not be local or special, but a cursory review of the Acts strongly indicates that they were drafted with someone in mind. References to a city of over 50,000 population, and a city of 35,000 people or more located in a National Park, are not subtle references. That approach to legislation, coupled with the fact that the state will not have to pay any pensions, can only result in inequities and distorted results.

Nor are the cities without fault in such matters. Standing by and permitting such legislation on the assurance that it will cause no mischief, is not merely innocence, it is complicity. Cities should, most of all, monitor and police legislation that affects them. What may appear harmless and "local" today, may rise up and bite tomorrow.

It is my respectful judgment that in this case the

majority has decided the end that should be reached and fashioned the law to justify that decision. Those good intentions will, in my judgment, cause more harm than the majority envisions. That is true because what the majority has done is decide that Act 486 of 1975 and Act 819 of 1977 grant to any retired mayor a retirement benefit. That is entirely wrong because Act 486 is permissive, it only permits a city to pass an ordinance allowing a mayor to draw a pension. The majority's opinion voids those two provisions in Act 486 that make it clear such pensions are permissive.[1] Now any retired mayor of a first class city has an absolute right to draw a pension whether the city has decided it can afford it or not.

I respectfully dissent.

---

[1]"Provided however, that the provisions of this Act shall be permissive, and cities of the first class may establish retirement system for mayors of such cities in accord with the provisions of this Act." Section 1 of Act 486 of 1975.

"The governing body of any city of the first class in this State may, upon adoption of an ordinance therefor, establish a retirement system for the mayor of such city in accordance with the provisions of this Act." Section 3 of Act 486 of 1975.