The Honorable Olin Cook State Representative 266 South Enid Avenue Russellville, AR 72801-4534
Dear Representative Cook:
I am writing in response to your request for my opinion on the following five questions:
 1. Should Revenue Loss Funding be included in the calculation of state revenue per average daily membership for the purposes [sic] of determining the amount of additional base funding a school district is eligible to receive?
 2. If Revenue Loss Funding is included in this calculation, what is the basis for its inclusion in the computational process?
 3. Of the three Arkansas Code sections that deal with the calculation of total state and local revenue per average daily membership — ACA §§ 6-20-326(a), 6-20-303(1) and 6-20-308(a)(2) — which controls and how should they be read?
 4. Is eligibility for Revenue Loss Funding due to lost student population associated with the sparsity of population referred to in 34 C.F.R. § 222.63(c)(2) (1994)?
 5. If this is the case, may one argue that Revenue Loss Funding should not be included in the calculation of state revenue per average daily membership in the determination of additional base funding?
RESPONSE
In my opinion, the answer to your first question is "yes." Section 6-20-326 of the Code expressly provides that revenue loss funding awarded for a significant one-year loss in student population must be included in total state and local revenue per average daily membership in determining a district's entitlement to receive additional base funding — a category of aid designed to ensure that total state and local revenue per average daily membership will at least equal minimum state and local revenue per average daily membership. The same conclusion applies if, in accordance with A.C.A. § 6-20-308(a)(2), one looks to the "federal range ratio" for guidance, see 34 C.F.R. § 222.61 et seq. (1994): Under the federal regulations, revenue loss funding is not expressly excluded from the formula and so must be treated as district revenue for purposes of determining whether a district is entitled to receive additional base funding. Finally, I believe either or both of these statutes would supersede A.C.A. § 6-20-303(29), which does not mention revenue loss funding in setting forth a formula for computing total state and local revenue per average daily membership. I have answered your second question in my response to your first question.
With respect to your third question, A.C.A. § 6-20-303(1) merely defines "additional base funding" without setting forth any formula to calculate the amount. Although there might be some tension between A.C.A. § 6-20-308(a)(2), which dictates computing district revenue using the federal range ratio formula, and A.C.A. § 6-20-326(a), which simply declares revenue loss funding part of total state and local funding per average daily membership, both statutes require including revenue loss funding in the formula. To the extent the two statutes conflict, I believe A.C.A. § 6-20-326(a) will control because it was more recently enacted. With respect to your fourth question, I believe revenue loss funding is "associated with the sparsity of population" defined as an exclusion in the federal range ratio formula insofar as a drastic drop in student population might trigger both revenue loss funding and funding for a newly existing or aggravated "sparsity." However, to establish this "association" is by no means to establish that revenue loss funding should be excluded from total state and local revenue per average daily membership. Accordingly, I believe that the answer to your fifth question is "no."
Question 1: Should Revenue Loss Funding be included in the calculation ofstate revenue per average daily membership for the purposes ofdetermining the amount of additional base funding a school district iseligible to receive?
This question, like all of your others, deals with the application of the Equitable School Finance System Act of 1995 (the "Act"), A.C.A. §6-20-301 et seq. (Repl. 1999 Supp. 2001), which the legislature enacted to meet the constitutional charge of maintaining a "general, suitable, and efficient system of free public schools" in the state. Ark. Const. art. 14, § 1. While the Act is highly technical in its provisions, its underlying purpose is to determine school funding in Arkansas by reference to a federal index — the "federal range ratio," see34 C.F.R. § 222.61 et seq. (1994)[1] — to ensure that each school district in the state will receive "an amount no less than eighty percent (80%) of the total state and local revenue per average daily membership of the local school district at the ninety-fifth percentile." A.C.A. § 6-20-303(20). This baseline of funding is designated the "minimum state and local revenue per average daily membership." Id.
In order to respond to your questions, I must offer some further definitions of terms. Subsection 6-20-303(29) of the Code defines the term "total state and local revenue per average daily membership" as follows:
 "Total state and local revenue per average daily membership" means in each local school district, the amount calculated by taking the sum of:
 (A) The local school district's uniform rate of tax times ninety-eight percent (98%) of the district's assessed valuation;
 (B) The local school district's additional mills for maintenance and operation times ninety-eight percent (98%) of the district's assessed valuation;
(C) The local school district's miscellaneous funds; and
 (D) State equalization funding, student classroom teacher funding, student unit funding, vocational funding, general facilities funding, and student growth funding available to the local school district and by dividing by the average daily membership of the local school district.
Subsection 6-20-303(4) of the Code defines the term "average daily membership" ("ADM") in pertinent part as follows:
 "Average daily membership" means the total number of days attended plus the total number of days absent by students in grades kindergarten through twelve (K-12) during the first three (3) quarters of each school year divided by the number of school days actually taught in the district during that period of time rounded up to the nearest hundredth.
Accord Arkansas Department of Education Rules and Regulations Governing the Distribution of Revenue Loss Funding 3.02.
With respect to the issue of "revenue loss funding," A.C.A. § 6-20-326(a) provides:
 The Department of Education shall provide funding to local school districts from available funds to aid local school districts which have suffered a significant loss of revenues. The loss of revenues considered under this section shall have occurred in a one-year period. Funding under this section shall only be for one (1) year and shall be considered nonrestricted revenues included in the calculation of total state and local funding per average daily membership.
Subsection 6-20-303(1) of the Code defines the term "additional base funding" as follows:
 "Additional base funding" means the state funding to local school districts to ensure that a local school district's total state and local revenue per average daily membership is no less than the minimum state and local revenue per average daily membership.
Subsection 6-20-308(a)(2) further provides: "For the purposes of additional base funding, any questions as to what revenue shall be included will be determined by reference to 34 C.F.R. § 222.63 (1994)."
You appear to feel some concern that the inclusion of revenue loss funding in the category of total state and local revenue per ADM pursuant to A.C.A. § 6-20-326(a) might conflict with the exacting formula set forth in A.C.A. § 6-20-303(29), which makes no reference to revenue loss funding as a component of total state and local revenue per ADM. You further appear concerned that the reference to "total state and local revenue" per ADM in A.C.A. §§ 6-20-303(1) and (20) might potentially conflict with the provisions of A.C.A. § 6-20-308(a)(2), which authorizes adjusting the "total" pursuant to federal regulation for purposes of calculating "additional base funding."
In considering the interplay of these statutes, I am guided by the following principles of statutory construction:
 The basic rule of statutory construction, to which all other interpretive guides must yield, is to give effect to the intent of the General Assembly. Pugh v. St. Paul Fire Marine Ins. Co., 317 Ark. 304, 877 S.W.2d 577 (1994). As a guide in ascertaining legislative intent, we often examine the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's jurisdiction. City of Little Rock v. ATT Comm., 318 Ark. 616, 888 S.W.2d 290 (1994); Mears v. Arkansas State Hospital, 265 Ark. 844, 581 S.W.2d 339 (1979).
Citizens To Establish A Reform Party v. Priest, 325 Ark. 257, 261,926 S.W.2d 432 (1996). Moreover, as the court noted in Vanderpoolv. Fidelity Casualty Insurance Co., 327 Ark. 407, 415, 939 S.W.2d 280
(1997):
 As a guide in ascertaining legislative intent, this court often examines the history of the statutes involved, as well as the contemporaneous conditions at the time of their enactment, the consequences of interpretation, and all other matters of common knowledge within the court's jurisdiction. Citizens to Establish a Reform Party v. Priest, 325 Ark. 257, 261, 926 S.W.2d 432, 435 (1996). Furthermore, in construing any statute, this court will place it beside other statutes relevant to the subject matter in question, giving it meaning and effect derived from the combined whole. Hercules, Inc. v. Pledger, 319 Ark. 702, 706, 894 S.W.2d 576, 578 (1995).
In addition:
 In determining the intent of the legislature, this court must look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. Brandon v. Arkansas Pub. Serv. Comm'n, 67 Ark. App. 140, 992 S.W.2d 834 (1999).
Southwestern Bell Telephone Co. v. Arkansas Public Service Commission,69 Ark. App. 323, 333, 13 S.W.3d 197 (2000). Also, as the court noted inScott v. Greer, 229 Ark. 1043, 1048-49, 320 S.W.2d 262 (1959):
 One of these rules, recognized and applied by this Court for many years, and applicable here, is: "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." We have quoted the above rule from Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656. It was also recognized in Wiseman v. Ark. Util. Co., 191 Ark. 854, 88 S.W.2d 81. In 50 Am.Jur. 371 "Statutes" 367, the text states: "It is an old and familiar principle . . . that where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision."
Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City of Fort Smith,268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session. A.C.A. §1-2-207(b); Sargent v. Cole, 269 Ark. 121, 598 S.W.2d 749 (1980). However, in such a case the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v. Gates, 180 Ark. 96, 21 S.W.2d 406 (1929). Finally, as the court noted in Priest, 325 Ark. at 265: "When an act amends the law, portions of the law that are not amended but simply retained are not thought of as new enactments. Peterson Produce Co. v. Cheney,237 Ark. 600, 374 S.W.2d 809 (1964)." Accord Bourne v. Board of Trustees,
343 Ark. ___, 59 S.W.3d 432 (November 15, 2001); see also Ark. Op. Att'y Gen. No. 2001-386.
With the foregoing principles in mind, I am prepared to consider whether revenue loss funding comprises an element of state and local revenue per ADM. In my opinion, it does. Subsection 6-20-326(a) of the Code, enacted by Acts 1296 and 1549 of 1999, is perfectly unambiguous in declaring that revenue loss funding "shall be considered nonrestricted revenues included in the calculation of total state and local funding per average daily membership." I appreciate that there is no mention of revenue loss funding in the formula for calculating state and local revenue per ADM set forth at A.C.A. § 6-20-303(29). However, the formula as currently codified was enacted by Act 1307, § 2 of 1997. Although the legislature amended various definitions set forth at A.C.A. § 6-20-303 in both 1999 and 2001, none of these amendments affected the text of subsection 303(29). Accordingly, applying the principle that non-amendatory reenactments are not considered new, I consider A.C.A. § 6-20-326(a) more recent legislation that must be given effect notwithstanding the absence of any reference to revenue loss funding in the formula set forth at A.C.A. § 6-20-303(29).
I should note that the applicability of the formula set forth at A.C.A. § 6-20-303(29) for calculating total state and local revenue per ADM was questionable even from the moment of Act 1307's enactment. As noted above, A.C.A. § 6-20-308(a)(2), which was also enacted in Act 1307,[2]
provided that "[f]or the purposes of additional base funding, any questions as to what revenue shall be included will be determined by reference to 34 C.F.R. § 222.63 (1994)" — i.e., by reference to the federal regulations setting forth the formula for calculating the federal range ratio. Since "additional base funding" is the amount needed to raise a district's total state and local revenue per ADM up to its required minimum state and local revenue per ADM, A.C.A. § 6-20-303(1), the somewhat cryptic phrase "what revenue shall be included" in A.C.A. § 6-20-308(a)(2) can only refer to revenues to be counted in the calculation of total state and local revenue per ADM. Unlike the formula set forth at A.C.A. § 6-20-303(29), which lists various types of revenue to be included in the calculation, the federal formula provides that all district revenues will be counted, subject only to certain exceptions that do not include revenue loss funding. 34 C.F.R. 222.63(d) (1994). Regardless, then, of which of these conflicting statutory provisions applies[3] — A.C.A. § 6-20-303(29) or A.C.A. § 6-20-308(a)(2) — I believe revenue loss funding should be included in determining total state and local revenue per ADM.
Question 2: If Revenue Loss Funding is included in this calculation, whatis the basis for its inclusion in the computational process?
See response to Question 1.
Question 3: Of the three Arkansas Code sections that deal with thecalculation of total state and local revenue per average daily membership— ACA §§ 6-20-326(a), 6-20-303(1) and 6-20-308(a)(2) — which controls andhow should they be read?
Your question assumes that the three statutes recited conflict — an assumption I question, although I must acknowledge that a certain tension exists between A.C.A. §§ 6-20-326(a) and -308(a)(2). Subsection 6-20-326(a) simply provides that total state and local revenue per ADM will include revenue loss funding. As previously noted, this statute was enacted by Acts 1296 and 1549 of 1999. Subsection 6-20-303(1) in no way contradicts this mandate in defining "additional base funding" as meaning the amount necessary to bring total state and local revenue per ADM up to minimum state and local revenue per ADM. However, A.C.A. § 6-20-308(a)(2), enacted by Act 1307 of 1997, somewhat complicates matters in providing that officials must apply the federal range ratio formula in determining "revenue" "[f]or the purposes of additional base funding." One might argue that this formula conflicts with A.C.A. § 6-20-326(a), which simply declares, without making any reference to the federal range ratio formula, that total state and local revenue per ADM will include revenue loss funding.[4]
In my opinion, one can harmonize these two statutes by characterizing A.C.A. § 6-20-326(a) as merely declaring and restating what would follow from applying the federal range ratio formula referenced in A.C.A. § 6-20-308(a)(2) — namely, that revenue loss funding must be included in total state and local revenue per ADM. See 34 C.F.R. 222.63(d) (1994) (declaring that all unexempted district revenues, a category the includes revenue loss funding, must be considered in calculating the federal range ratio). Alternatively, assuming the statutes conflict, I believe A.C.A. § 6-20-326(a) will control, since it was adopted subsequent to A.C.A. § 6-20-308(a)(2). See Acts 1296 and 1549 of 1999 (enacting A.C.A. § 6-20-326(a)) and Act 1307 of 1997 (enacting A.C.A. § 6-20-308(a)(2)). Under either reading of the statutes, total state and local revenue per ADM will include revenue loss funding.
Question 4: Is eligibility for Revenue Loss Funding due to lost studentpopulation associated with the sparsity of population referred to in34 C.F.R. § 222.63(c)(2) (1994)?
In my opinion, the answer to this rather general question is "yes," although I do not believe this "association" warrants excluding revenue loss funding from total state and local revenue per ADM.
The referenced federal regulation, 34 C.F.R. § 222.63(c)(2) (1994), provides:
 If a State aid program uses a "weighted pupil," a "classroom," "instructional unit," or other designated unit of need in determining allocations of State aid in order to take account of special cost differentials, the computation of per pupil revenue or current expenditures may be made on those bases. There are two allowable categories of special cost differentials: (i) Those associated with pupils having special educational needs, such as handicapped children, economically disadvantaged children, non-English speaking children, and gifted and talented children; and (ii) those associated with sparsity or density of population, cost of living, or special socio-economic characteristics within the area served by an agency.
The State of Arkansas currently uses "categorical" designated units of need in determining allocations of aid in accordance with those allowed in the above regulation — i.e., it provides aid (1) when a student has "special educational needs"; and (2) when various demographic or "socio-economic" circumstances warrant. Among the cognizable circumstances in the latter category is "sparsity or density of population" — a factor that will warrant a "special cost differential" because it obviously results in disparities in per pupil transportation costs. See, e.g., A.C.A. § 6-20-1700 et seq. (setting forth the standards and conditions to receive high-cost transportation funding). As a practical matter, the effect of applying this "special cost differential" will be to allow a district not only to receive such funding but further to exclude it from the category of state and local revenue per ADM, thereby potentially increasing the amount of additional base funding it will receive from the state.
You apparently want to know if a district that has received revenue loss funding pursuant to A.C.A. § 6-20-326(a) due to lost student population can treat this funding as special-cost-differential revenue subject to the "sparsity" exception set forth at 34 C.F.R. § 222.63(c)(2) (1994).[5]
In my opinion, the answer to this question is "no." As previously noted, A.C.A. § 6-20-326(a) expressly provides that revenue loss funding must be "included in the calculation of total state and local funding per average daily membership." As reflected in subsection 326(a), revenue loss funding is a benefit that the state affords districts that have suffered a significant loss in student population in a given year, and the legislature has clearly indicated that this revenue must be counted as revenue for purposes of determining a district's entitlement to additional base funding. It is further "nonrestricted" revenue available to be used for any purpose the district chooses, as opposed to revenue earmarked for a particular purpose. Under the federal range ratio formula, only the latter category of funding potentially qualifies for exclusion from total state and local revenue per ADM.34 C.F.R. §§ 222.63(c)(2) and (d)(1) (1994).
Having offered this conclusion, I should note that the mere fact that revenue loss funding comprises a part of total state and local revenue per ADM does not mean it is logically unrelated to the "sparsity" exclusion set forth in the federal range ratio formula. The receipt of revenue loss funding necessarily entails a significant loss of students in a given year. As discussed above, assuming a loss of students either creates or aggravates "sparsity" as defined in the federal regulations, it can trigger an entitlement to high-cost transportation and other categorical benefits. However, although such benefits might be expressly excluded from total state and local revenue per ADM under the federal range ratio formula, nonrestrictive revenue loss funding is not excluded and must in any case be included in the calculation pursuant to A.C.A. § 6-20-326(a). In short, then, any significant loss in student population may result in aid both through revenue loss funding and increased high-cost transportation funding, with only the latter category excluded from total state and local revenue per ADM.[6] However, a loss in student population is by no means a necessary condition of sparsity, which can exist in a lightly populated district even when student population increases or remains stable.
Question 5: If this is the case, may one argue that Revenue Loss Fundingshould not be included in the calculation of state revenue per averagedaily membership in the determination of additional base funding?
For the reasons set forth in my response to your previous question, I believe that the answer to this question is "no."
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] The specific designation of the 1994 C.F.R. regulation avoids a constitutional problem that would arise if the Arkansas legislature were to peg state revenue allocation to a variable federal standard. As I have discussed in detail in Ark. Op. Att'y Gen. Nos. 2000-117 and 2001-035, any state legislation that imposes conditions that might vary with future changes in federal law would in all likelihood constitute an unlawful delegation of legislative power in violation of Ark. Const. art. 4, §§ 1
and 2 and Ark. Const. amend. 7.
[2] My research reveals that A.C.A. § 6-20-303(29) and A.C.A. § 3-20-308(a)(2) were both contained in the original version of S.B. 545 and were hence written and adopted contemporaneously.
[3] My inquiries reveal that the state has scrupulously followed the federal formula since 1997.
[4] Although you do not mention the issue in your question, A.C.A. § 6-20-308(a)(2) conflicts with A.C.A. § 6-20-303(29). See response to question 1, supra. As I noted in my response to your first question, I do not believe this conflict casts into doubt whether revenue loss funding should be included in total state and local revenue per ADM. It should.
[5] Although your question focuses in particular on revenue loss due to loss of student population, I should note that A.C.A. § 6-20-326(a) provides for compensation in the event of significant revenue loss for any reason.
[6] This conclusion would appear to apply despite the fact that it is by no means axiomatic that a loss of students in a sparsely populated district will inevitably result in increased transportation costs. On the contrary, the loss of a student whose transportation requires a miles-long daily detour on a bus route would effect a clear savings in transportation costs. I suspect officials use the student-loss formula based on the statistical probability that a loss of student population will result in an increase in the cost of transportation per remaining student.
I am informed that student population per square mile is used in the federal range ratio formula as a proxy for general population per square mile — the latter being difficult to determine because the available census data might be up to a decade old. I am at a loss to explain why the benchmark reference in the federal range ratio formula is general, as opposed to student, population per square mile, since the underlying concern is the relative cost of transporting students. Nevertheless, as reflected in 34 C.F.R. § 222.63(c)(2), the formula generally identifies "sparsity or density of population" as a factor in determining whether a special cost differential exists.