The Honorable Randy Laverty State Senator Post Office Box 303 Jasper, AR 72641-0303
Dear Senator Laverty:
I am writing in response to your request for my opinion regarding a question arising from the following reported facts:
 Boone County owns some property which it leases to the City of Harrison for one dollar per year. The City of Harrison, in turn, makes the property available to Boone County Special Services, a non-profit, non-sectarian entity.
 The City of Harrison would like to make improvements to the property, but is [u]nable to secure funding due to the fact that it does not have title to the property.
The justice of the peace on whose behalf you have made your request has reported the following facts, which are not entirely consistent with the facts recited in your request:
 1. Property in question is owned by the County and was purchased from the City of Harrison, Urban Renewal Agency, in 1974. The purchase price was $5,900. The County in turn leased the property to Boone County Special Services, a state/federally funded entity which provides services to disabled persons. The lease provided for an annual payment of $1.00 for 25 years.
 2. Boone County Special Services would now like to reimburse the county for the original purchase price so that it could proceed with a building project which is in context further urban renewal.
My inquiries reveal that Boone County Special Services is indeed the proposed purchaser.
Against this backdrop, you have posed the following question:
 May Boone County sell this property to the City of Harrison [sic: "Boone County Special Services"] at a price other than that spelled out in ACA 14-16-105 and also eliminate the need for the appraisal process and sale at public auction?
RESPONSE
In my opinion, the answer to this question is, in all likelihood, "yes," so long as the transaction is supported by adequate consideration.
The statute referenced in your request, A.C.A. § 14-16-105 (Supp. 2003 Acts 2005, No. 1240), provides generally that if the county court determines to "sell and cause to be conveyed any real estate" appraised at a value exceeding $1,000 — a condition I assume would apply to the property at issue here — the sale must proceed through sealed bids following public notice and the selling price must be at least ½ of the appraised value. See Ark. Op. Att'y Gen. No. 2004-055 (generally discussing the application of this statute). On its face, this statute would appear to preclude the sale of the property referenced in your request in the proposed manner.
However, in my opinion, another statute bears more particularly on your request. Section 14-16-107 of the Code (Repl. 1998) provides:
 Whenever a portion of county lands are dedicated for the benefit of any lawfully incorporated, quasi-public, nonprofit, nonsectarian organizations including, but not limited to, medical clinics, that county real property may be sold to any buyer, upon the approval of the county judge and a two-thirds (2/3) vote of the quorum court of the county, without the necessity of soliciting for competitive bids.
You indicate that BCSS is a nonprofit, nonsectarian corporation. The remaining questions, then, are whether BCSS can be characterized as a "quasi-public" entity and whether the county has "dedicated" the property on which BCSS is located for BCSS' benefit.
Your question closely resembles one addressed by one of my predecessors in the attached Ark. Op. Att'y Gen. No. 92-022, which considered the proposed sale of the county-owned site of the Green Acres Nursing Home in Paragould, Arkansas. Like BCSS, the nursing home at issue in my predecessor's opinion was acknowledged to be a nonprofit, nonsectarian corporation.
With respect to the question of whether the nursing home might be considered a "quasi-public" institution, my predecessor opined:
 The statute in question refers to "medical clinics" as being within the statute's purview. It can thus be assumed that the legislature intended that these clinics be regarded as "quasi-public" at least for purposes of this statute. Similarly, it is my opinion that a nursing home is, in all likelihood, within the purview of this statute, especially when it is the recipient of public monies through a revenue bond issue for a "public purpose." See generally, Brandt v. St. Vincent Infirmary, 287 Ark. 431, 701 S.W.2d 103 (1985) (Dudley, J. concurring) (discussing whether private hospitals are "quasi-public" institutions); A.C.A. § 14-164-303(a)(2)(C) and A.C.A. § 14-164-402(2).
I agree completely with my predecessor's conclusion, which fully supports my own conclusion that the BCSS is a "quasi-public" institution. Although you do not report that BCSS is supported by revenue bonds, as was the nursing home at issue in my predecessor's opinion, it is reportedly the recipient of state and federal funds, thus confirming that it serves a public purpose. Moreover, I see no principled distinction between an institution that serves as a nursing home and one that provides services to disabled persons. Accordingly, I believe the "quasi-public" prong of the test set forth in A.C.A. § 14-16-107 has been met.
My predecessor also addressed as follows the meaning of the term "dedicated" in the statute:
 The remaining question is whether the county land is "dedicated for the benefit" of the nonprofit corporation. Ordinarily, the legal meaning of the term "dedicate" implies the appropriation of private land to some public use, not the dedication of public land to, for example, a charitable use. See generally, Black's Law Dictionary, (5th Ed. 1979) at 371. It is my opinion therefore, that the term "dedicated" is used in the statute in its common and ordinary sense, rather than in its legal sense. It will always be presumed by the Supreme Court that the legislature intended to use words in their usual and natural meaning (Simmons First Nat. Bank. v. Abbott, 288 Ark. 304, 705 S.W.2d 3
(1986)), unless the words have a fixed and well-known legal signification. Werbe v. Holt, 217 Ark. 198, 229 S.W.2d 225 (1950) and Henderson v. Russell, 267 Ark. 140, 589 S.W.2d 565 (1979). Under this construction the word dedicate is defined as meaning "to set apart to a definite use." Webster's Seventh New Collegiate Dictionary, (1972) at 215. It is my opinion that the property under this definition has, in all likelihood been "dedicated" for the benefit of the nonprofit corporation.
I fully concur in this reasoning and believe it supports the conclusion that the county has "dedicated" for BCSS' benefit the property upon which BCSS sits. Accordingly, pursuant to the express terms of A.C.A. §14-16-107, I believe the county may sell this property to "any buyer," including BCSS itself, without soliciting competitive bids so long as the county judge and a 2/3 majority of the quorum court approve the sale.
I must note, however, that any sale of the property will need to be supported by adequate consideration. In this regard, my predecessor offered the following analysis:
 A remaining concern, however, is the consideration for the sale. It is my understanding that the county wishes to convey the property with little or no money being paid by the nonprofit corporation. The question of whether this action will withstand constitutional challenge will depend upon the facts. Sales of public property for as little as one dollar, however, have been upheld where there was no fraud, or such gross inadequacy of consideration as will be the equivalent to fraud, and where there is consideration for the sale other than the payment of money, in the form of, for example, "public advantage" or economic benefits to the community. See Chamber of Commerce v. Pulaski County, 113 Ark. 438, 170 S.W. 1165 (1914) and City of Blytheville v. Parks, 221 Ark. 734, 255 S.W.2d 962 (1953). The sufficiency of the consideration, however, will depend upon the particular facts attendant [to] the transaction.
(Footnote omitted.)
In the present case, the county would reportedly receive consideration in the exact amount it paid for the property in 1974. Only a finder of fact could determine whether the property has appreciated in value over the last 31 years to an extent that would render this purchase price constitutionally inadequate. However, I will note that the dollar-per-year term of the current lease suggests that the operation of BCSS serves a strong public interest and that its continued operation following the sale might in itself constitute a significant element of consideration. Moreover, although I am unaware of the details, the quorum-court member reports that the sale would expedite a building project that he characterizes as "further urban renewal." In my opinion, a finder of fact might well consider this salutary prospect another valid element of consideration.
In his correspondence to you, the quorum-court member who solicited your request expressed some concern regarding the recent enactment of Acts 2005, No. 1240, which amended A.C.A. § 14-16-105 in ways that do not bear on your request. I assume the source of this concern is the fact that § 1 of Act 1240 of 2005 contains the following provision:
 Any sale or conveyance of real or personal property belonging to any county not made pursuant to the terms of this section shall be null and void.
A.C.A. § 14-16-105(f)(1)(a)(i). The question may be whether the inclusion of this language in the recent amendment supersedes the limited contrary provisions of A.C.A. § 14-16-107, which authorizes a sale of property under certain circumstances without taking competitive bids. In my opinion, this concern is unwarranted. In amending totally unrelated sections of A.C.A. § 14-16-105, Act 1240 simply reproduced the language just quoted, which has been unchanged since the initial enactment of what is now A.C.A. § 14-16-105 by Acts 1945, No. 193, §§ 1-6. Although as a general rule the most recent legislation on a topic will supersede conflicting earlier legislation on the same topic, the "last passed" rule has no application when "nonamendatory reenactments" are at issue.Citizens to Establish a Reform Party v. Priest, 325 Ark. 257, 265,926 S.W.2d 432 (1996). As the court observed:
 When an act amends the law, portions of the law that are not amended but simply retained are not thought of as new enactments. Peterson Produce Co. v. Cheney, 237 Ark. 600, 374 S.W.2d 809 (1964). Resorting to the" last passed" rule under such circumstances would elevate mechanical application over thoughtful analysis.
Id. As noted above, the provision now numbered A.C.A. §14-16-105(f)(a)(A)(i) has been unchanged since 1945. By contrast, the alternative procedure for selling county property set forth in A.C.A. §14-16-107 was enacted in 1977 as Acts 1977, No. 17, § 1 and has not been amended since. It must accordingly be seen as setting forth a permissible mode of conveyance under the conditions recited therein.
Moreover, unlike A.C.A. § 14-16-105, which generally addresses sales of county property, A.C.A. § 14-16-107 is more narrowly tailored in addressing only sales permitted under the recited circumstances. As a rule, a general statute does not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). In my opinion, this principle also supports allowing a sale to proceed under A.C.A. § 14-16-107 under appropriate circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: JD/cyh